Edgar Josias VASQUEZ, Appellant,

v.

The STATE of Texas, Appellee.

No. 14–09–00620–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

Nov. 4, 2010.

Rehearing En Banc Overruled
Dec. 9, 2010.

Connie Brown Williams, Houston, for appellant.

Lana S. Shadwick, Houston, for state.

Panel consists of Justices ANDERSON, FROST, and SEYMORE.

## OPINION

JOHN S. ANDERSON, Justice.

Appellant, Edgar Josias Vasquez, appeals the trial court's denial of his motion to suppress. Appellant was charged by indictment with the felony offense of possession with intent to deliver a controlled substance, namely, cocaine. After the trial court denied his motion to suppress, appellant pled guilty. The trial court found appellant guilty and assessed punishment at thirty-five years' confinement in the Institutional Division of the Texas Department of Criminal Justice. Tex. Health & Safety Code § 481.112(f). We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

State Trooper Charles Kibble has worked for the Texas Department of Public Safety for fifteen years. During this time, he attended several schools that train police officers to "recognize signs of deception, signs of nervousness, and also clinical and nonverbal indicators" that someone is involved in criminal activity. Trooper Kibble also specializes in the "detection and apprehension of drug or narcotics carriers on major highways."

On December 11, 2007, Trooper Kibble was stationary in his patrol car running his radar on the Highway 59 freeway when he noticed appellant had what appeared to be

illegal tinting on the windows of his vehicle, a Ford F150 extended cab truck. After pacing appellant's car, Trooper Kibble determined appellant was speeding so he activated his emergency lights and gestured appellant to move his vehicle to the right side of the road. However, appellant hesitated to move to the right and eventually stopped in the left emergency lane at approximately 11:10 a.m. During this time, Trooper Kibble ran a license and registration check which ultimately turned out clear. Due to his failure to move to the right lane, Trooper Kibble stopped in front of appellant's vehicle, used hand gestures, and operated the P.A. system on his patrol car to get appellant to move to the right side and off the freeway. Based on his training and experience, Trooper Kibble considered the initial stop unusual because drivers typically move to the right instead of the left, which "perked [his] interest from the get-go."

At approximately 11:13 a.m., appellant stopped on the service road. Trooper Kibble proceeded to ask appellant questions regarding his driving record, unpaid traffic tickets, and travel plans. Appellant informed Trooper Kibble he lived in the Pasadena area and was en route to Greenspoint Mall to purchase a dress for his wife. Trooper Kibble grew more suspicious because there were three or four major malls located between Pasadena and the Greenspoint Mall. Based on his experience, Trooper Kibble knew Greenspoint Mall to be a "high-crime area" and a "source location" for drugs and narcotics. Furthermore, Trooper Kibble testified appellant presented "nonverbal indicators of deception" during the initial questioning. Specifically, Trooper Kibble testified appellant engaged in "a lot of facial scratching[,]" which is "one of the keys that [he] always look[s] at." Trooper Kibble further testified appellant's frequent scratching was "a sign of nervousness" and "one of

the nonverbal indicators that [he was] trained to recognize."

Trooper Kibble also testified appellant's carotid artery was heavily pronounced and rapidly pulsating. When asked whether he had been trained in recognizing abnormally distended arteries, Trooper Kibble did not answer in the affirmative. Instead, Kibble testified that he did recognize the difference in appellant's arteries, which were "sticking out of his neck" during the traffic stop, as opposed to appellant's non-pulsating arteries at the time of the suppression hearing. Trooper Kibble further testified it did not "make any sense" that appellant was not working during the day. He also found it odd appellant would drive to a more distant mall when there were several malls in between his home and Greenspoint Mall, especially when gas prices were nearly $4.00 a gallon. Trooper Kibble's suspicions grew when appellant could not name the store he intended to visit to purchase his wife's dress.

Around 11:19 a.m., Trooper Kibble returned to his patrol car, finished writing the warning citation, and made a comment stating: "I'm going to go a little bit deeper here." By this point, Trooper Kibble had already decided "some kind of criminal activity was more likely being perpetrated." At 11:21 a.m., Trooper Kibble received a second "clear" with regard to appellant's possible warrants. However, Trooper Kibble maintained his suspicions based on appellant's prior physical and verbal responses. As a result, Trooper Kibble returned to appellant's vehicle, and again questioned appellant about his wife's dress. Trooper Kibble then, without returning appellant's license, asked appellant for his consent to search his truck "specifically for drugs and narcotics." Both Trooper Kibble and appellant testified that appellant voluntarily and freely told

Trooper Kibble that he could search appellant's vehicle at 11:23 a.m. Trooper Kibble did not place handcuffs on appellant, but asked for permission to do a pat down search of appellant for officer safety. According to Trooper Kibble, appellant consented to that search, which did not reveal any weapons. Trooper Kibble then requested that appellant sit in the patrol car while he searched appellant's truck, again for officer safety. Appellant agreed. *Id.* Trooper Kibble informed appellant that, at any time, he could activate a switch located at the back of Trooper Kibble's patrol car if he wanted Trooper Kibble to stop searching his vehicle.

Once Trooper Kibble placed appellant in the patrol car, he proceeded with the search. Trooper Kibble inspected the passenger areas in the front and back of the vehicle and found no contraband. Eventually, Trooper Kibble moved to the tailgate area of the truck where he found a locked, hard cover painted to match the body color of the vehicle. When Trooper Kibble could not determine which key opened the hard cover,[1] he returned to appellant in the patrol car and asked him which key opened the hard cover. At approximately 11:30 a.m., Trooper Kibble unlocked the hard cover and discovered a white, powdery substance, which was later identified as cocaine. Trooper Kibble found forty-nine individual bundles totaling sixty-eight kilograms of cocaine. After Trooper Kibble called for a wrecker, he gave appellant his *Miranda* warnings[2] and arrested him.

At the suppression hearing, the video of Trooper Kibble's traffic stop and search of appellant's vehicle that was recorded by the patrol car camera was admitted into evidence. The DVD[3] provided an audible recording of the conversation between Trooper Kibble and appellant. During the hearing, appellant identified himself as the person operating the truck in the video recording. Appellant then testified he pulled to the left lane instead of the right because he was closer to the left lane. Appellant also testified he was en route to Greenspoint Mall to purchase a dress for his wife because he "didn't find anything" at other malls. When the State asked whether appellant "voluntarily and freely told [Kibble] he could search [his] car," appellant replied in the affirmative. Appellant also confirmed the fact that Trooper Kibble informed appellant of his option to press a button to stop the search at any time. However, during closing arguments, appellant's trial counsel argued the evidence seized by Trooper Kibble should have been suppressed because Trooper Kibble "unduly prolonged" appellant's detention. Appellant argued Trooper Kibble did not have articulable facts that "would lead to reasonable suspicion of criminal activity ... [which] certainly do not connect or indicate ... criminal activity." Finally, appellant argued his consent to search was "tainted" due to the illegality of the detention.

The trial court orally made findings of fact and conclusion of law on the record as follows:

 Trooper Charles Kibble specializes in the apprehension of drug carriers and has specialized training with regard to narcotics detention [sic].

 The Court further finds that the initial traffic stop was lawful.

1. The hard cover enclosed the top of the entire "bed" of the truck.

2. *Miranda v. Arizona*, 384 U.S. 436, 467–68, 86 S.Ct. 1602, 1624, 16 L.Ed.2d 694 (1966).

3. During the suppression hearing, both parties referred to the disk as a "CD." To make clear that the disk provided both an audio and video recording of Trooper Kibble's stop of appellant, we refer to the disk as the "DVD."

■ The Court further finds that Trooper Kibble's suspicions first arose when the defendant failed to yield [the] right-of-way in the proper manner and stopped his vehicle in the left emergency lane.

■ The Court finds that the defendant's purported destination, the Greenspoint Mall area, is a high-crime area and a source location for drugs and narcotics.

■ The Court further finds that the defendant's explanation as to the purpose of his trip to Greenspoint to buy his wife a dress was implausible and all the more so since the defendant could not name the store or stores where he would shop for the dress.

■ The Court also finds that Trooper Kibble's suspicion was also aroused by the fact that the defendant was not at work at the time in question and he was traveling relatively far from his home in Pasadena to purchase a dress in Greenspoint Mall rather than a mall closer to his home and also in view, as the trooper noted, the price of gas being higher at that time.

■ The Court finds that Trooper Kibble also observed nonverbal clues, which according to his training and experience, indicated deception and nervousness, such being, lots of facial scratching and the defendant's carotid artery visibly pulsing.

■ The Court finds that the length of the detention to be relatively short timewise, and Officer Kibble articulated the several factors giving rise to a reasonable suspicion on his part preceding the detention.

■ The Court finds Trooper Kibble's questioning of the defendant reasonable at the time and under the circumstances presented.

■ The Court finds consent to search was voluntarily given.

■ In view of the totality of the circumstances, the relatively short period of detention, and the fact that the defendant gave his consent to search voluntarily and could have stopped same by notifying Trooper Kibble of his withdrawal of consent by activating a control switch, the Court concludes that the stop, detention, and search were lawful and not in violation of the defendant's rights under the Fourth Amendment of the U.S. Constitution nor under Article I, Section 9 of the Texas Constitution.

The trial court then denied appellant's motion to suppress and appellant pled guilty to the offense of possession with intent to deliver a controlled substance. The trial judge also entered supplemental findings of fact and conclusions of law:

1. That on December 11, 2007, Trooper C. Kibble of the Texas Department of Public Safety stopped the defendant for illegal window tinting and speeding.

2. The initial traffic stop was based on probable cause and was a legal traffic stop.

3. That Trooper Kibble engaged the Defendant in consensual conversation while writing the Defendant a warning for the two aforementioned offenses.

4. That Trooper Kibble believed that criminal activity was afoot based on the Defendant's answers to questions and the defendant's behavior.

5. That Trooper Kibble continued to engage the Defendant in consensual conversation based on his reasonable suspicion of criminal activity.

6. That Trooper Kibble asked for and received verbal consent to search the defendant's vehicle.

7. That the search of the Defendant's vehicle was conducted pursuant to a knowing and voluntary consent to search the vehicle by the Defendant.

8. That Trooper Kibble is a credible witness, and the Court accepts as true his testimony as to his basis for his reasonable suspicion for further detaining the Defendant and requesting his consent to search the vehicle.

9. That the Trooper's factual basis for the detention did equate to reasonable suspicion that would permit the continued detention of the Defendant.

10. That because there was reasonable suspicion to continue the detention, the detention was lawful.

11. That because the continued detention of the defendant was lawful, the consent given by the defendant was valid.

The trial judge sentenced appellant to thirty-five years' confinement in the Institutional Division of the Texas Department of Criminal Justice. This appeal followed.

## DISCUSSION

Asserting Trooper Kibble violated his rights under both the Fourth Amendment to the United States Constitution and Article I, Section 9 of the Texas Constitution, appellant raises four separate issues on appeal challenging the trial court's denial of his motion to suppress. U.S. CONST. amend. IV; Tex. Const. art. I, § 9.[4] Specifically, they are: (1) the evidence is factually insufficient to support the trial court's denial of the motion to suppress; (2) the trial court's findings of fact are not supported by the record; (3) appellant's

consent to search was not voluntarily given; and (4) the trial court abused its discretion in denying the motion to suppress. Because the issues of reasonable suspicion to detain appellant and voluntary consent to search are included in the trial court's findings of fact and conclusions of law, we consolidate appellant's four original issues into two: (1) the trial court erred when it denied appellant's motion to suppress because the record does not support the trial court's conclusion that Trooper Kibble had reasonable suspicion to further detain appellant once the traffic stop had been completed; and (2) the trial court erred when it determined that appellant voluntarily consented to Trooper Kibble searching his vehicle.

## I. Standard of Review

■ We review a trial court's ruling on a motion to suppress under a bifurcated standard of review, giving almost total deference to the trial court's findings of historical fact and reviewing de novo the trial court's application of the law. *See Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim. App.1997). Questions of reasonable suspicion and probable cause are reviewed de novo on appeal. *Garcia v. State*, 296 S.W.3d 180, 184 (Tex.App.-Houston [14th Dist.] 2009, no pet.). The trial court is the exclusive trier of fact and judge of the credibility of the witnesses and the weight to be given to their testimony at the suppression hearing. *State v. Ross*, 32 S.W.3d 853, 855 (Tex.Crim.App.2000). As the trier of fact, the trial court is free to believe or disbelieve all or any part of a witness's testimony, even if that testimony is uncontroverted. *Id.; Marsh v. State*, 140 S.W.3d 901, 905 (Tex.App.-Houston [14th

4. Because appellant has not provided any explanation or authority for construing the Texas Constitution as conferring greater protection in this area of the law than the federal constitution, we will not separately address his state constitutional argument. *See Black v. State*, 26 S.W.3d 895, 896 n. 4 (Tex.Crim. App.2000).

Dist.] 2004, pet. ref'd). In reviewing a trial court's ruling on a motion to suppress, an appellate court must view the evidence in the light most favorable to the trial court's ruling. *State v. Kelly,* 204 S.W.3d 808, 818 (Tex.Crim.App.2006). When, as here, the trial court makes findings of fact, we determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports these fact findings. *Id.* We then review the trial court's legal ruling de novo unless the fact findings that are supported by the record are also dispositive of the legal ruling. *Id.* We must uphold the trial court's ruling if it is supported by the record and correct under any theory of the law applicable to the case. *Armendariz v. State,* 123 S.W.3d 401, 404 (Tex.Crim.App.2003).

## II. Did Trooper Kibble have reasonable suspicion to further detain appellant?

■ The Fourth Amendment is not a guarantee against all searches and seizures, but only against *unreasonable* searches and seizures. *U.S. v. Sharpe,* 470 U.S. 675, 682, 105 S.Ct. 1568, 1573, 84 L.Ed.2d 605 (1985). For Fourth Amendment purposes, a traffic stop is a seizure and must be reasonable to be lawful. *Davis v. State,* 947 S.W.2d 240, 243–45 (Tex.Crim.App.1997). A traffic stop is reasonable if the police officer was justified in making the stop and his actions during the stop were confined in length and scope to that necessary to fulfill the purpose of the stop. *Kothe v. State,* 152 S.W.3d 54, 63 (Tex.Crim.App.2004). In other words, an officer may initiate a traffic stop if he has a reasonable basis for suspecting that a person has committed a traffic violation. *See Garcia v. State,* 827 S.W.2d 937, 944 (Tex.Crim.App.1992). However, there is no requirement that an actual traffic offense be committed, just that the officer reasonably believed that a violation was in

progress. *Green v. State,* 93 S.W.3d 541, 545 (Tex.App.-Texarkana 2002, pet. ref'd). Furthermore, an officer does not need independent reasonable suspicion to request an individual's information so long as the officer does not attempt to coerce the individual's cooperation. *St. George v. State,* 237 S.W.3d 720, 723 (Tex.Crim.App.2007). During a traffic stop, it is reasonable for an officer to check for outstanding warrants and demand identification, a valid driver's license, and proof of insurance from the driver. *Spight v. State,* 76 S.W.3d 761, 766 (Tex.App.-Houston [1st Dist.] 2002, no pet.).

■ Nevertheless, once the reason for the traffic stop has been satisfied, the detention may not be used as a "fishing expedition for unrelated criminal activity." *Id.* Generally, it is lawful to detain and question an individual while the computer check is pending. *U.S. v. Shabazz,* 993 F.2d 431, 437 (5th Cir.1993). However, once the computer check is completed and the officer knows the driver has a valid license with no outstanding warrants and the car is not stolen, the traffic-stop investigation is finished. *Kothe,* 152 S.W.3d at 63–64. It is at this time that the detention must end and the driver must be permitted to leave. *Id.* at 64. However, once an officer concludes the investigation of the conduct that initiated the traffic stop, continued detention of a person is permitted if the officer has reasonable suspicion to believe another offense has been or is being committed. *U.S. v. Jones,* 234 F.3d 234, 241 (5th Cir.2000); *Davis,* 947 S.W.2d at 244.

■ The determination of reasonable suspicion is made by considering the totality of the circumstances. *Ford v. State,* 158 S.W.3d 488, 492–93 (Tex.Crim. App.2005). Reasonable suspicion is based on an objective standard that disregards

the subjective intent of the officer and looks entirely at whether an objective basis for the detention exists. *Garcia v. State,* 43 S.W.3d 527, 530 (Tex.Crim.App. 2001). An officer's reasonable suspicion must be supported by specific articulable facts which, taken together with rational inferences from those facts, would warrant a person of reasonable caution in the belief that a continued detention was justified. *Herrera v. State,* 80 S.W.3d 283, 288 (Tex. App.-Texarkana 2002, pet. ref'd). These facts must be more than a mere hunch or suspicion. *Davis,* 947 S.W.2d at 244. Instead, the facts used by the officer must create some reasonable suspicion that some activity out of the ordinary is occurring or has occurred, some suggestion to connect the detainee with the unusual activity, and some indication the unusual activity is related to a crime. *Meeks v. State,* 653 S.W.2d 6, 12 (Tex.Crim.App. 1983).

In the instant case, appellant was stopped for speeding and the suspicion that he had illegal tinting on his windows. Appellant does not challenge the reasonableness of the initial traffic stop. Appellant, however, contends Trooper Kibble lacked reasonable suspicion to further detain appellant after receiving a "clear" computer check and without issuing a citation. The State argues Trooper Kibble had reasonable suspicion to further detain appellant based on the following specific articulable facts: (1) the initial stop was out of the ordinary when appellant pulled to the left rather than to the right; (2) appellant's distant travel plans to Greenspoint Mall when there were several major malls in between his home and Greenspoint Mall; (3) Trooper Kibble's knowledge of the Greenspoint Mall being a "high-crime area" and a "source location for the ultimate destination of drugs and narcotics[;]" (4) appellant's absence from work during the day; (5) appellant's desire to travel so far when gas prices were almost $4.00 a gallon; (6) appellant's failure to identify the store or the type of dress he was looking for; (7) Trooper Kibble's past training in identifying signs of someone involved in a crime; and (8) appellant's frequent face scratching and the appearance of his very pronounced and pulsating carotid arteries. We agree with the State.

Considering the totality of the circumstances, the record supports the trial court's finding that Trooper Kibble had reasonable suspicion to further detain appellant. In this case, Trooper Kibble lawfully stopped appellant for a traffic violation after witnessing appellant speeding. *See Armitage v. State,* 637 S.W.2d 936, 939 (Tex.Crim.App.1982) ("It is well settled that a traffic violation committed in an officer's presence authorizes an initial stop."). Once appellant stopped on the service road, Trooper Kibble was authorized to ask for appellant's information. *Mohmed v. State,* 977 S.W.2d 624, 628 (Tex.App.-Fort Worth 1998, pet. ref'd). Trooper Kibble asked appellant for his identification and questioned him about his travel plans. *See id.* (holding requests for information concerning a driver's license, ownership of a vehicle, insurance information, driver's travel destinations, and purpose of a trip are all proper inquiries during a traffic stop).

In addition to appellant's "unusual" responses to Trooper Kibble's questions and the nature of the traffic stop, Trooper Kibble testified he had several years of experience in recognizing nonverbal cues of nervousness and deception which, according to Trooper Kibble, indicate involvement in criminal activity. For instance, Trooper Kibble's suspicions were first aroused when appellant hesitated to follow Trooper Kibble's instructions to

move to the right side of the freeway during the traffic stop. While preparing the citation, Trooper Kibble, already alert, questioned appellant about his travel plans. At this time, Trooper Kibble noticed appellant's pronounced and pulsating arteries and frequent head scratching, which provoked more suspicion. Based on his training and appellant's curious responses, Trooper Kibble grew more wary. Furthermore, Trooper Kibble considered appellant's distant travel plans to Greenspoint Mall "out of the ordinary," especially since gas prices were nearly $4.00 a gallon and the mall was a well-known area for narcotics.

As the trier of fact, the trial court observed firsthand the demeanor and appearance of the witnesses. Therefore, the trial court was entitled to accept Trooper Kibble's testimony as true and credible and disbelieve appellant's testimony. *Ross*, 32 S.W.3d at 855 (the trial court may believe or disbelieve all or any part of a witness's testimony). Thus, considering the totality of the circumstances and viewing the evidence in the light most favorable to the trial court's ruling, we conclude the trial court did not err when it concluded Trooper Kibble had reasonable suspicion to further detain appellant once the traffic stop was completed. *See Valencia v. State*, 820 S.W.2d 397, 400 (Tex.App.-Houston [14th Dist.] 1991, pet. ref'd) (determining officer may conduct brief investigative detention of the occupants of the vehicle, based upon his observations of suspicious activity by the occupants of the vehicle before and after the stop, combined with his knowledge of the area and the frequency of crime in the area, and the reasonable inferences to be drawn).

### III. Did appellant voluntarily consent to Trooper Kibble searching his vehicle?

In his second issue, appellant contends the trial court should have granted his motion to suppress because his consent to search resulted from an illegal detention. Because we hold Trooper Kibble had reasonable suspicion to further detain appellant, the State must satisfy its burden to prove by clear and convincing evidence that appellant voluntarily consented to the search so as to validate his consent, and thereby, make the discovered evidence admissible. After all, although Trooper Kibble had reasonable suspicion to further detain appellant, Trooper Kibble still needed probable cause to search appellant's vehicle. *See Florida v. Royer*, 460 U.S. 491, 497, 103 S.Ct. 1319, 1323, 75 L.Ed.2d 229 (1983). In the absence of probable cause, the validity of a search rests on appellant's purported consent. *Id.*

Although a search conducted without a warrant issued upon probable cause is "per se unreasonable," a search conducted with voluntary consent is an exception. *Rayford v. State*, 125 S.W.3d 521, 528 (Tex.Crim.App.2003) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973)); *Reasor v. State*, 12 S.W.3d 813, 817 (Tex. Crim.App.2000). During a traffic stop, the officer may request the driver's consent to search his vehicle. *Hunter v. State*, 955 S.W.2d 102, 104 (Tex.Crim.App.1997). Texas law requires the State to prove voluntariness of consent to search by clear and convincing evidence, rather than by mere preponderance of evidence. *Carmouche v. State*, 10 S.W.3d 323, 331 (Tex. Crim.App.2000); *State v. Ibarra*, 953 S.W.2d 242, 245 (Tex.Crim.App.1997). "To be valid, consent to search must be free and voluntary." *U.S. v. Kelley*, 981 F.2d 1464, 1470 (5th Cir.1993) (quoting *United States v. Olivier–Becerril*, 861 F.2d 424, 425 (5th Cir.1988)). In order to be voluntary, the consent to search must "not be

coerced, by explicit or implicit means, by implied threat or covert force." *Carmouche,* 10 S.W.3d at 331. Consent must be shown to be positive and unequivocal. *Id.* Thus, consent obtained through duress or coercion, whether actual or implied, is deemed involuntary. *Allridge v. State,* 850 S.W.2d 471, 493 (Tex.Crim.App.1991).

To determine whether a person's will was "overborne," trial courts "must assess the totality of all the surrounding circumstances—both the characteristics of the accused and the details of the interrogation." *Schneckloth,* 412 U.S. at 226, 93 S.Ct. 2041. Some relevant factors include: (1) the youth of the accused; (2) the education of the accused; (3) the intelligence of the accused; (4) the constitutional advice given to the accused; (5) the length of the detention; (6) the repetitiveness of the questioning; and (7) the use of physical punishment. *Reasor,* 12 S.W.3d at 818 (citing *Schneckloth,* 412 U.S. at 226, 93 S.Ct. 2041). An officer's failure to inform the accused that consent can be refused may also be considered. *Johnson v. State,* 68 S.W.3d 644, 653 (Tex.Crim. App.2002). However, the absence of such information does not automatically render the accused's consent involuntary. *Id.* Furthermore, consent is not rendered involuntary merely because the accused is under arrest. *Id.* Thus, if the record supports a finding of clear and convincing evidence that the consent to search was freely and voluntarily given, an appellate court will not disturb that finding. *Carmouche,* 10 S.W.3d at 331.

Appellant alleges Trooper Kibble wrongfully prolonged his detention. As a result, appellant claims his consent thereafter is inherently "tainted" by the illegality of that "unreasonable" detention. Appellant also argues his consent was the direct result of Trooper Kibble's "covert coercion and not the independent free act

of [appellant's] will." Furthermore, appellant asserts Trooper Kibble, after having received the "clear" computer check, did not "write the warning ticket, did not return all of [appellant's] documents to him, and repeated questions previously asked of appellant prolonging his detention."

In response, the State argues appellant's consent was voluntary based on his actions and his testimony. The State relies on appellant's testimony where he stated "he voluntarily gave Officer Kibble permission to search the vehicle." Furthermore, appellant testified Trooper Kibble informed appellant that "he could hit the switch in the patrol car if he wanted to stop the search, and that he did not do so because he voluntarily consented to the search of his car." Moreover, the State asserts appellant was never arrested nor placed in handcuffs until the cocaine was discovered.

In some cases, one can infer coercion from an officer's retention of an individual's driver's license. *Jones,* 234 F.3d at 243. This may be a factor in determining whether one voluntarily consented. *Id.* In such circumstances, when a police officer retains an individual's necessary travel documents such as a driver's license or an alien registration card, the individual's consent thereafter may be considered to not be "an independent act of free will." *U.S. v. Dortch,* 199 F.3d 193, 202 (5th Cir.1999) (holding any reasonable person would believe that he was unable to leave without such items). Needless to say, like any typical individual, appellant may have felt some pressure to oblige or "consent" to any requests made by a police officer, in this case Trooper Kibble, especially when that officer retained his driver's license. Furthermore, although Trooper Kibble repeated the same questions to appellant concerning his travel plans, this factor is not conclusive. While neither Trooper Kibble's retention of appellant's documents

nor his repetitive questions is dispositive, both are factors that may be considered in determining the voluntariness of his consent. We conclude these factors weigh against voluntariness.

However, taking into account other relevant factors set forth in *Reasor*, the record supports the trial court's finding that appellant's consent to search was freely and voluntarily given. The record reveals that appellant, at the time of the suppression hearing, was 35 years of age. The record does not provide proof of appellant's education or intelligence, however, one may reasonably infer appellant is a normal, average adult individual. Appellant testified he spoke English and was capable of understanding and communicating with Trooper Kibble on the day of his detention. The record also reveals appellant has been married to his wife for nine years and has three children. Furthermore, both appellant and Trooper Kibble testified appellant agreed he "voluntarily and freely told [Kibble] that he could search [his] car." They also agreed Trooper Kibble informed appellant of the option to stop the search by hitting a button in the patrol car, which appellant chose not to exercise. *See Johnson*, 68 S.W.3d at 653 (determining an officer's failure to inform the accused that consent can be refused may also be considered). Aside from Trooper Kibble's retention of appellant's license, the record does not indicate any physical or psychological coercion or punishment. *See Erdman v. State*, 861 S.W.2d 890, 893 (Tex.Crim.App. 1993) (holding an individual's consent must not be the result of physical or psychological pressures from law enforcement). Instead, the record shows Trooper Kibble requested to search appellant's car "specifically for drugs and narcotics," which appellant testified he voluntarily agreed to.

Moreover, the length of the detention was reasonable. Trooper Kibble initially stopped and detained appellant on the left side of the freeway at approximately 11:10 a.m. Appellant then admitted to giving consent to search his vehicle at approximately 11:23 a.m. Trooper Kibble took seven minutes to search the vehicle until he discovered the cocaine around 11:30 a.m. The total length of the detention lasted approximately twenty minutes before the cocaine was discovered in appellant's truck. Appellant does not dispute the reasonableness of the amount of time for the detention and even agreed that "it was a short period of time." Although there are no bright-line time limits for traffic stops, Texas courts have found longer detention periods reasonable. *See Balentine v. State*, 71 S.W.3d 763, 771 (Tex.Crim.App. 2002) (holding investigative detention of thirty to sixty minutes reasonable because questioning lasted no longer than necessary and officer employed no dilatory tactics); *Josey v. State*, 981 S.W.2d 831, 845 (Tex.App.-Houston [14th Dist.] 1998, pet. ref'd) (permitting ninety minute detention because officers did not continue to hold appellant after all legitimate components of the investigative detention had been completed).

Trooper Kibble's withholding of appellant's license may have made it difficult, if not impossible, for appellant to leave. However, we have determined appellant's consent was requested within a legal detention period. Unlike other cases, where the court found the defendant's consent was not an "independent act of free will" when officers retained a necessary belonging for travel purposes, the request for consent in the instant case did not occur during an illegal detention. *Cf. Dortch*, 199 F.3d at 201–02 (holding defendant's consent was not an "independent act of free will" when officers retained his alien registration card during an *illegal* detention) (emphasis added); *Royer*, 460 U.S. at 501, 103 S.Ct. 1319 (determining police

"seized" defendant by retaining his plane ticket and licenses, but had defendant "voluntarily consented to the search of his luggage while he was justifiably being detained on *reasonable suspicion,* the products of the search would be admissible *against* him") (emphasis added). Considering the totality of the circumstances, we hold the record supports the trial court's conclusion that appellant's consent was voluntary.

### CONCLUSION

Viewing the evidence in the light most favorable to the trial court's ruling, the record supports the trial court's denial of appellant's motion to suppress. The trial court did not act arbitrarily or unreasonably, and thus, did not abuse its discretion by denying appellant's motion to suppress. *See Montgomery v. State,* 810 S.W.2d 372, 380 (Tex.Crim.App.1990) ("[I]t is a question of whether the court acted without reference to any guiding rules and principles. Another way of stating the test is whether the act was arbitrary or unreasonable."). We overrule appellant's issues on appeal and affirm the trial court's judgment.

FROST, J., concurring.

KEM THOMPSON FROST, Justice, concurring.

The main issue in this appeal is whether a traffic-stop detention was unreasonable because the officer did not ask the driver for consent to search the vehicle until two minutes after receiving confirmation that the driver had a valid license and no outstanding warrants, and that the vehicle was not stolen. The majority concludes that the detention was reasonable because by this time the officer had reasonable suspicion to believe that another offense had been or was being committed. Instead, this court should conclude that continuing the detention for two more minutes was reasonable under the circumstances, even presuming that the officer had no reasonable suspicion of another offense.

Fourth Amendment "reasonableness" is measured " 'in objective terms by examining the totality of the circumstances' "; it " 'eschew[s] bright-line rules, instead emphasizing the fact-specific nature of the . . . inquiry.' " *Kothe v. State,* 152 S.W.3d 54, 63 (Tex.Crim.App.2004) (quoting *Ohio v. Robinette,* 519 U.S. 33, 39, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996)). It requires a balance between the public interest served and the individual's right to be free from arbitrary detentions and intrusions. *Id.*

In the case under review, Trooper Kibble's initial detention of appellant was reasonable based on suspicion of two traffic violations. Trooper Kibble promptly initiated a license and warrants check. He asked appellant various questions and prepared warning citations. By 11:21 a.m., Trooper Kibble had received confirmation that appellant had a valid license and no outstanding warrants and that the vehicle was not stolen. Two minutes later, appellant validly consented to a search of his vehicle, which resulted in the discovery of sixty-eight kilograms of cocaine. The main issue is whether Trooper Kibble's continued detention of appellant for these two minutes was reasonable.

In deciding whether the duration of a detention is "reasonable," the general rule is that an investigative stop can last no longer than necessary to effect the purpose of the stop. *See id.* But, during a traffic stop, police officers may request information from the driver, such as a driver's license and vehicle registration, and may conduct a computer check on that information. *See id.* After this computer check is completed, and the officer learns that the driver has a valid license and no outstanding warrants, and that the vehicle

is not stolen, the traffic-stop investigation is fully resolved. *See id.* at 63–64. The officer may continue the detention if another reasonable basis for detaining the driver arises. *See id.* at 63–67. If not, the Court of Criminal Appeals has indicated that the officer should release the driver shortly after this computer check is completed. *See id.* at 63–64 (stating that driver must be permitted to leave after computer check is completed and there is no new valid basis for detaining the driver, indicating that detention for a brief period after this point can be reasonable, and holding that detention for very short period of time after this point was reasonable). But there are no rigid time limitations on these detentions. *See id.* at 64. In determining whether the detention of a driver was reasonable, the issue is whether the officer diligently pursued a means of investigation that was likely to confirm or dispel his suspicions quickly, during the time necessary to detain the driver. *Id.*

Further, an officer making a traffic stop need not investigate the situation in a particular order; however, the detention becomes unreasonable under the circumstances if the officer "unduly prolongs" the detention. *See id.* at 65. The order of events during a traffic stop, though relevant to the determination of "reasonableness," is not determinative. *See id.* at 66. Fourth Amendment "reasonableness" does not require a "single, formulaic approach" to a traffic-stop investigation, and it does not mandate rigid adherence to "the least intrusive means" of investigation defined by reviewing courts using hindsight. *Id.* at 66 (quoting *United States v. Brigham,* 382 F.3d 500, 511 (5th Cir.2004) (en banc)).

As in *Kothe,* in the case under review, there was a brief interval between completion of the computer check and the next event allowing further detention. In *Kothe,* the interval was very short because the next event occurred almost immediately after the completion of the computer check. *See id.* at 66–67. Nonetheless, the *Kothe* court stated that there was a period of time between these two events and the court held that continued detention of the driver during this interval was reasonable. *See id.* at 66–67. In the case under review, the time period was two minutes. The record shows that Trooper Kibble diligently pursued his investigation, and there was no evidence that he engaged in a "fishing expedition" or unduly prolonged the detention. *See id.* at 65–67. Viewing the totality of the circumstances, the continued detention of appellant during the two-minute period between the completion of the computer check and appellant's consent to a search of the vehicle was "reasonable" as a matter of substantive Fourth Amendment law. *See id; Caraway v. State,* 255 S.W.3d 302, 308 (Tex.App.-Eastland 2008, no pet.) (involving an officer who received consent to search a vehicle less than one minute after receiving information about the driver's criminal history). For the foregoing reasons, the trial court did not abuse its discretion in denying appellant's motion to suppress. Accordingly, I respectfully concur in the court's judgment.