**Affirmed and Memorandum Opinion filed March 26, 2015.**



In The

# Fourteenth Court of Appeals

## NO. 14-13-00944-CR

## JORGE ALBERT PAVON-MALDONADO, Appellant

### V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 258th District Court**
**Polk County, Texas**
**Trial Court Cause No. 21793**

## M E M O R A N D U M   O P I N I O N

The State of Texas charged appellant Jorge Albert Pavon-Maldonado with felony possession of marijuana.[1]  The trial court denied appellant's motion to suppress evidence on grounds it had been seized as a result of an illegal search. Appellant pled guilty.  The trial court found appellant guilty and assessed his punishment at seven years' imprisonment.  Appellant contends in a single issue that his conviction must be reversed because the trial court erred in denying his

---

[1] *See* Tex. Health & Safety Code Ann. § 481.121(b)(5) (Vernon 2010).

motion to suppress.  We affirm.[2]

## BACKGROUND

Department of Public Safety Trooper Gene Flowers was operating stationary radar outside the city of Seven Oaks on May 2, 2011.  The Department had alerted Flowers earlier that day to be on the lookout for a Dodge three-quarter-ton pickup, described as green and an older model, which could be carrying narcotics.

Flowers testified at the hearing on the motion to suppress that he observed a truck meeting the description traveling northbound into Seven Oaks at 65 miles per hour.  He testified that the speed limit in the area was 60 miles per hour.  Flowers stopped the truck.

A dash-mounted camera in Flowers's patrol car recorded video of the stop, and a microphone worn by Flowers recorded audio.  The perspective of the video is from the front of Flowers's patrol car to the rear of the truck.  The camera did not record activity inside the truck's cab.  Conversations captured by the microphone are muffled by intermittent traffic noise.  The trial court admitted the recording of the stop into evidence.  The court watched the recording after Flowers testified on direct examination.

The recording shows that Flowers approached the vehicle from the passenger's side after it came to a stop.  He questioned two individuals:  appellant, who drove the truck, and his passenger Milton Solis Solaris.  Flowers stated on the recording that appellant was driving 65 miles per hour, in an area where the speed limit was 60 miles per hour.  Flowers asked for appellant's driver's license and

---

[2] Appellant initially appealed to the Ninth Court of Appeals.  Pursuant to a docket equalization order, this appeal was transferred to this court.  *See* Tex. Gov't Code Ann. § 73.001 (Vernon 2013).  We must decide the case in accordance with the precedent of the Ninth Court of Appeals in the event there is a conflict with precedent from this court.  *See* Tex. R. App. P. 41.3.

insurance.

The recording shows that Flowers was handed an item from the passenger's side window almost immediately and a second item just over a minute later. Flowers testified that he received appellant's Louisiana driver's license. He then waited while appellant and Solis searched for proof of insurance, which they eventually handed to him. Flowers testified that appellant and Solis seemed nervous.

Flowers asked appellant to step out of the truck. Flowers testified that he did so because appellant and Solis seemed nervous, and because it took them so long to find proof of insurance. Appellant exited the truck and walked with Flowers to the front of the patrol car.

Flowers's questioning of appellant was captured on the recording. Flowers asked appellant where he and Solis were headed. Appellant responded that they were headed "to Louisiana to work." Flowers asked appellant where in Louisiana he was headed, and appellant responded: "I don't know, a little town." Flowers asked appellant what type of work he and Solis did. Appellant responded: "Construction." Flowers asked: "Just general construction? Y'all work on oil rigs, refining rigs?" Appellant answered that he previously worked on "rigs" and "soil mixing" for the levies. Flowers asked: "Is that what you're going to do up there?" Appellant answered: "I just got laid off so we're getting to work on the side." Flowers again asked appellant: "So where are y'all headed to in Louisiana?" Appellant responded that Solis knew the town. Flowers asked whether appellant and Solis had jobs lined up. Appellant answered: "We don't have a job right now." Flowers asked how long appellant and Solis would stay in Louisiana. Appellant answered: "Probably three or four days."

Flowers requested permission to search appellant's person for weapons and

3

drugs.  Appellant consented.  Flowers patted down appellant but did not find contraband.  The entire conversation and search took approximately one minute.

Flowers returned to the passenger's side window of the truck.  He asked Solis for his identification.  It is unclear from the recording whether Solis handed Flowers anything.  Flowers asked Solis where he and appellant were headed.  Solis did not respond immediately.  Flowers asked his question in Spanish.  Solis responded: "Louisiana."  Flowers asked in Spanish: "Why?"[3]  Solis responded in English: "For working as mechanics."

Flowers continued to question Solis in English and Spanish.  The recording shows the two struggling to communicate over the next three minutes.  Flowers asked Solis where he was from and if he was in the country legally.  Solis answered that he was from Guatemala and was in the country legally.  Flowers again asked for identification.  Solis responded:  "It's in Houston."  Flowers asked: "Y'all are both mechanics?"  Solis responded that he was a "diesel" mechanic.  He struggled in English to explain his work.[4]

Flowers further questioned Solis about the purpose of his trip.  Solis stated that he was going to Louisiana to look for work for two days.  Flowers asked Solis: "Whose truck is this?"  Solis answered that it was a friend's truck.  He explained that his friend lived in Houston, but that he did not know his friend's exact address.

Flowers asked Solis to exit the truck, and Solis complied.  Flowers asked Solis for consent to search his person for drugs, and Solis gave consent.  Flowers patted down Solis but did not find contraband.  Flowers again asked Solis for proof of his identification.  Solis did not produce proof.  The recording shows that Solis

---

[3] Flowers used the Spanish word "porque."

[4] Solis's response regarding his work is muffled on the recording.  He stuttered the words "diesel" and "mechanico," and uttered several incomprehensible words.

4

searched his wallet. Flowers looked down as Solis searched and asked Solis how much money he had. Solis replied: "three hundred or four hundred dollars." Flowers asked Solis to give his full name, date of birth, and place of birth. Solis complied, and Flowers wrote down Solis's answers in a notebook. The recording shows that Flowers looked toward Solis's chest and asked: "What is all this?" Solis picked up a pendant and stated that it was his father. Flowers asked the name of Solis's father, which Solis gave. Flowers then requested that Solis remain in front of the truck. Flowers's search and questioning of Solis outside the truck lasted an additional three minutes.

Flowers walked back to appellant, who had remained in front of the patrol car. Flowers questioned appellant: "Y'all are heading to Louisiana, working construction? You got all the information?" Appellant responded: "Yeah, I don't know. They just said that we're building a house or pouring some slabs on some houses they are rebuilding. Putting some insulation, all that." Flowers confirmed this response with appellant. Flowers asked appellant if there was anything illegal in the truck that Flowers should know about such as guns, marijuana, or cocaine. Appellant answered: "No."

Flowers asked appellant: "You mind if I search the vehicle and its contents?" Appellant answered: "Yes, sir." Flowers repeated his question: "You mind if I search the vehicle?" Appellant replied: "You going to search?" Flowers asked: "You do mind?" Appellant's response is muffled. It is either "Yes" or "Okay." Flowers asked: "Can I search the vehicle, yes or no?" Appellant responded: "Yes." Flowers stated: "I can? Okay." Appellant did not reply. Flowers asked appellant to step away from the patrol car. Flowers's second exchange with appellant lasted a minute.

Flowers returned to his patrol car and radioed in the truck's license plate

5

number and appellant's and Solis's names.  He then searched the truck.  He testified that he tapped an external fuel tank in the bed of the truck and that it did not sound full; however, it appeared full when he took the cap off the tank. Flowers removed a toolbox to access the tank.  He testified that he moved the tank and saw it to be completely empty on the left side.  Flowers testified that he discovered a compartment in the underside of the tank from which he removed 38 cellophane wrapped bundles of a substance later determined to be marijuana.

The recording shows that Flowers searched the truck for 30 minutes until announcing that he had found marijuana.  The recording does not show that appellant objected to the scope of the search while Flowers searched.

The State indicted appellant with felony possession of marijuana.  Appellant moved to suppress evidence obtained during Flowers's search of the truck on grounds that the search was illegal.  The trial court denied appellant's motion.

Appellant requested findings of fact and conclusions of law, but the judge who presided over the suppression hearing did not sign any.  Appellant pleaded guilty.  The trial court found appellant guilty and sentenced him to seven years' imprisonment.  Appellant timely appealed.

We *sua sponte* abated this appeal for the trial court to issue findings of fact and conclusions of law.  A successor judge to the judge who presided over the suppression hearing signed findings of fact and conclusions of law.  The court found that the judge who had presided over the suppression hearing believed Flowers to be credible and reliable.  The court found that Flowers observed appellant's truck exceeding the posted speed limit and that Flowers stopped appellant's truck.  The court found that appellant gave consent to search the truck. The court concluded that appellant's consent was voluntary and that the search was lawful.

6

We review a trial court's ruling on a motion to suppress under a bifurcated standard. *Vasquez v. State*, 324 S.W.3d 912, 918 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd) (citing *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)). We give "almost total deference to a trial court's determination of the historical facts that the record supports especially when the trial court's fact findings are based on an evaluation of credibility and demeanor." *See Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We afford the same level of deference to a trial court's ruling on "application of law to fact questions," or "mixed questions of law and fact," if the resolution of those questions turns on an evaluation of credibility and demeanor. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007). We review *de novo* "mixed questions of law and fact" that do not depend upon credibility and demeanor. *See id.*

When the trial court makes explicit fact findings, we determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports those findings. *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). We review the trial court's legal ruling *de novo*, unless its explicit fact findings that are supported by the record are also dispositive of the legal ruling. *See id.*

Appellant contends that we are "not required in this case to give almost total deference to the trial court's factual determinations because witness credibility and demeanor are not at issue with the video recording because the video recording contradicts the trial court's factual determinations." Appellant does not specify which fact findings the video recording allegedly contradicts.[5] Moreover, he

---

[5] At the time appellant filed his brief, the trial court had not signed explicit fact findings as appellant requested in writing the day of the suppression hearing. We abated this case for the

misstates the applicable standard.

We give almost total deference to a trial court's determination of the historical facts even when "'that determination is based on a videotape recording admitted into evidence at a suppression hearing.'" *Amador*, 221 S.W.3d at 673 (quoting *Montanez v. State*, 195 S.W.3d 101, 109 (Tex. Crim. App. 2006)). Therefore, we apply the deferential standard of review to the trial court's factual determinations that are based on the traffic stop recording. *See Carter v. State*, 309 S.W.3d 31, 40-42 (Tex. Crim. App. 2010) (deferring to trial court's fact findings that police officer's pre-*Miranda* questioning was not a deliberate attempt to avoid the requirements of *Miranda*, and that defendant's statements were knowingly and voluntarily made, although the findings were based, in part, on a recording of defendant's interrogation); *State v. Gobert*, 275 S.W.3d 888, 891-92, n.13 (Tex. Crim. App. 2009) (deferring to trial court's factual determination regarding a statement made on an unclear recording).

## ANALYSIS

In a single issue, appellant contends that the trial court erred in denying his motion to suppress. He argues in sub-issues that his initial detention was unreasonable and that the consent he gave to Flowers to search the truck was not

---

trial court to issue findings of fact and conclusions of law. *See State v. Cullen*, 195 S.W.3d 696, 699 (Tex. Crim. App. 2006) ("[U]pon the request of the losing party on a motion to suppress evidence, the trial court shall state its essential findings."). A successor judge to the judge who presided over the suppression hearing signed the trial court's findings and conclusions. The judge who presided over the suppression hearing had resigned and entered into a voluntary agreement with the State Commission on Judicial Conduct to be disqualified from future service as a judge in Texas. Appellant does not contend that the trial court's findings and conclusions are insufficient. We accept the trial court's findings of fact and conclusions of law. *See Velez v. State*, No. AP-76,051, 2012 WL 2130890, at *13-14 (Tex. Crim. App. June 13, 2012) (not designated for publication) (findings of fact and conclusions of law on a motion to suppress, which were prepared by a successor judge based on the record and transcript of the suppression hearing, were sufficient where the judge who presided over the suppression hearing was unavailable).

voluntary.

## I. Reasonable Detention

### A. Applicable Law

The Fourth Amendment to the United States Constitution and Article 1, Section 9 of the Texas Constitution protect individuals from unreasonable searches and seizures. U.S. Const. amend. IV; Tex. Const. art. I, § 9; *Guerra v. State*, 432 S.W.3d 905, 911 (Tex. Crim. App. 2014).[6] To suppress evidence because of an alleged Fourth Amendment violation, the defendant bears the initial burden of producing some evidence that rebuts the presumption of proper police conduct. *Amador*, 221 S.W.3d at 672. A defendant meets this burden by establishing that a search or seizure occurred without a warrant. *Id.* The burden then shifts to the State to prove that the search or seizure was conducted pursuant to a warrant or was reasonable under the totality of the circumstances. *Id.* at 672-63; *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005).

A traffic stop is a seizure under the Fourth Amendment. *Vasquez*, 324 S.W.3d at 919. A traffic stop is reasonable if the police officer was justified in making the stop and the officer's actions during the stop were confined in length and scope to that necessary to fulfill the purpose of the stop. *Id.* (citing *Kothe v. State*, 152 S.W.3d 54, 63 (Tex. Crim. App. 2004)). A police officer is justified in making a stop if he has probable cause to believe that a traffic violation has

---

[6] We analyze the state and federal constitutional arguments together because appellant did not brief separately state and federal constitutional issues or argue that the Texas Constitution provides greater protection than the United States Constitution. *See Keehn v. State*, 279 S.W.3d 330, 334 (Tex. Crim. App. 2009) (not reaching defendant's state constitutional issue regarding warrantless search because defendant did not brief separately the state and federal constitutional issues in the court of appeals); *Black v. State*, 26 S.W.3d 895, 896 (Tex. Crim. App. 2000) ("The appellant offers no reason for construing the Texas Constitution as conferring greater protection in this area of the law than the federal constitution, and therefore we will not address his state constitutional argument.").

occurred.  *Walter v. State*, 28 S.W.3d 538, 542 (Tex. Crim. App. 2000).

In deciding whether the duration of a stop is reasonable, "[T]he general rule is that an investigative stop can last no longer than necessary to effect the purpose of the stop."  *Kothe v. State*, 152 S.W.3d 54, 63 (Tex. Crim. App. 2004).  A traffic stop may involve both an investigation into the specific suspected criminal activity and a routine check of the driver's license and information.  *Id.* at 65.  During a routine traffic stop, a police officer may reasonably demand identification, a valid driver's license, and proof of insurance from the driver, and check for outstanding warrants.  *Id.* at 63-64, n.36; *Vasquez*, 324 S.W.3d at 919; *Veal v. State*, 28 S.W.3d 832, 835 (Tex. App.—Beaumont 2000, pet. ref'd).  An officer also may request information concerning the vehicle's ownership, the driver's destination, and the purpose of the trip.  *United States v. Brigham*, 382 F.3d 500, 508 (5th Cir. 2004) (en banc); *Lambeth v. State*, 221 S.W.3d 831, 836 (Tex. App.—Fort Worth 2007, pet. ref'd) (en banc) (op. on reh'g); *Haas v. State*, 172 S.W.3d 42, 50 (Tex. App.—Waco 2005, pet. ref'd); *Veal*, 28 S.W.3d at 835; *see also Vasquez*, 324 S.W.3d at 920 (officer had reasonable suspicion to detain a driver after a traffic stop based on the driver's "unusual" responses to questions about his travel plans).

A detention becomes unreasonable under the circumstances if the officer "unduly prolongs" the detention after the original articulable suspicion has been resolved.  *See Kothe*, 152 S.W.3d at 65-67 (detention of a driver for an additional three to 12 minutes during a warrant check and for a brief period immediately after the check was reasonable).  "[O]nce the original purpose for the stop is exhausted, police may not *unnecessarily* detain drivers solely in hopes of finding evidence of some other crime."  *Id.* at 64 (emphasis in original).

"Fourth Amendment 'reasonableness' does not require a 'single, formulaic approach' to a traffic stop investigation, nor does it require rigid adherence to 'the

least intrusive means' of investigation." *Id.* at 66 (quoting *Brigham*, 382 F.3d at 511); *see also Ohio v. Robinette*, 519 U.S. 33, 39 (1996) ("[W]e have consistently eschewed bright-line rules, instead emphasizing the fact-specific nature of the reasonableness inquiry."); *United States v. Sharpe*, 470 U.S. 675, 685-86 (1985) (rejecting rigid 20-minute time limit for reasonable traffic stop detentions). Instead, we must examine, in assessing whether the duration of a traffic stop is reasonable, "'whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant.'" *Kothe*, 152 S.W.3d at 64 (quoting *Sharpe*, 470 U.S. at 686).

## B. Discussion

Appellant's detention and Flowers's seizure of marijuana from the truck occurred without a warrant. Appellant argues that the initial traffic stop was unjustified and that the length of the stop was unreasonable.[7]

---

[7] Appellant also asserts that Flowers abandoned the traffic violation investigation and continued to detain appellant without reasonable suspicion that appellant was, had been, or soon would be engaged in criminal activity. *See Derichsweiler v. State*, 348 S.W.3d 906, 914 (Tex. Crim. App. 2011) (A warrantless detention may be justified by a police officer's reasonable suspicion that the person detained is, has been, or soon will be engaged in criminal activity); *see also Vasquez*, 324 S.W.3d at 920-21 (detention reasonable based on initial investigation of traffic violation and officer's subsequent reasonable suspicion that another offense had been or was being committed). Although appellant's detention may be reasonable based on Flowers's suspicion that appellant was engaged in an offense other than a traffic violation, we cannot consider the issue because the trial court did not make essential findings that would enable us to analyze whether Flowers's suspicion was reasonable. *See State v. Elias*, 339 S.W.3d 667, 674 (Tex. Crim. App. 2011) (the losing party on a motion to suppress is, upon request, entitled to "essential findings" of fact that are "adequate to provide an appellate court with a basis upon which to review the trial court's application of the law to the facts."); *see also Crain v. State,* 315 S.W.3d 43, 48–49 (Tex. Crim. App. 2010) ("We review *de novo* whether the totality of circumstances is sufficient to support an officer's reasonable suspicion of criminal activity."). Therefore, we consider only whether appellant's detention was reasonable pursuant to a traffic violation.

### 1. Initial Traffic Stop

Appellant asserts that the traffic stop was "patently illegal." He asserts that the speed limit where Flowers observed the truck was 70 miles per hour, rather than 60 miles per hour as Flowers testified. Appellant does not dispute that he drove 65 miles per hour.

Appellant introduced at the suppression hearing a photograph of a speed limit sign showing a 70 miles per hour speed limit. Flowers testified that the sign was located on the opposite side of Seven Oaks from where he observed the truck. He testified that he observed the truck traveling at 65 miles per hour in an area where the speed limit was 60 miles per hour.

The trial court admitted appellant's exhibit. It stated: "[I] admit it but subject to the fact that that was not . . . the location [where] the stop[] occurred." The trial court made a finding of fact that "Flowers was running radar on Highway 59 when he clocked a green [D]odge exceeding the posted speed." The traffic stop recording does not show a speed limit sign.

The trial court's determination that the truck exceeded the legal speed limit is supported by Flowers's testimony, and is not indisputably contradicted by the recording. Therefore we defer to the trial court's determination. *See Guzman*, 955 S.W.2d at 89. We hold that Flowers was justified in making the traffic stop because he had probable cause to believe the driver of the truck exceeded the legal speed limit. *See Walter*, 28 S.W.3d at 542 ("[T]he decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred.").

Appellant also argues that the traffic stop was illegal because Flowers did not comply with Texas Transportation Code section 543.002(a)(2). Section

12

543.002(a)(2) provides:

> A person arrested for a [traffic violation] shall be immediately taken before a magistrate if . . . the person demands an immediate appearance before a magistrate or refuses to make a written promise to appear in court as provided by this subchapter.

Tex. Transp. Code Ann. § 543.002(a)(2) (Vernon 2011).

Section 543.002(a)(2) is inapplicable to this case. Flowers detained appellant to conduct an investigation into a probable traffic violation; he did not arrest appellant for a traffic violation. *See Lambeth*, 221 S.W.3d at 836 ("A routine traffic stop resembles an investigative detention."); *see also Berkemer v. McCarty*, 468 U.S. 420, 439 (1984) ("[T]he usual traffic stop is more analogous to a so-called 'Terry stop,' [*see Terry v. Ohio*, 392 U.S. 1 (1968)], than to a formal arrest."). Flowers arrested appellant after finding marijuana in the truck.

## 2. Duration of the Stop

Appellant argues that Flowers unduly prolonged appellant's detention until appellant gave consent to search the truck "by asking irrelevant, nonsensical questions that had absolutely nothing to do with the purpose of the stop for speeding." He argues that his detention was unreasonable because of the undue delay.

Appellant does not specifically point to any line of Flowers's questioning that he considers unreasonable. Instead, appellant argues that Flowers's actions were motivated by a tip he received to be on the lookout for a vehicle meeting the description of the truck. Flowers also testified that he was motivated to question appellant and Solis by a "hunch" that they were involved in "something else."

Reasonableness is measured in objective terms. *See Kothe*, 152 S.W.3d at 63. Therefore, Flowers's actions control our analysis, not his motivations. *See id.*;

13

*see also Arkansas v. Sullivan*, 532 U.S. 769, 772 (2001) (officer's subjective intentions play no role in ordinary, probable cause Fourth Amendment analysis).

The trial court found that Flowers stopped appellant for a traffic violation and that appellant consented to a search of the truck during this stop. A favorable view of the evidence supports these findings. *See Kelly*, 204 S.W.3d at 818. We determine based on these findings that appellant's detention was reasonable.

The recording shows that Flowers stopped appellant and stated that he had exceeded the legal speed limit. Flowers asked appellant for his driver's license, proof of insurance, destination, and purpose of his trip. Flowers's requests were reasonable during a routine traffic stop. *See Brigham*, 382 F.3d at 508; *Kothe*, 152 S.W.3d at 63-64, n.36; *Vasquez*, 324 S.W.3d at 919-20; *Lambeth*, 221 S.W.3d at 836; *Haas*, 172 S.W.3d at 50; *Veal*, 28 S.W.3d at 835. Flowers reasonably searched appellant's person with his consent. *See Kendrick v. State*, 93 S.W.3d 230, 234 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd) (frisk reasonable with valid consent).

Flowers questioned Solis with difficulty. Solis stated that he and appellant were going to Louisiana to work as diesel mechanics. Appellant, in contrast, stated that he and Solis were going to Louisiana to work in construction. Flowers questioned appellant again about his trip destination and purpose. Flowers then asked appellant for consent to search the truck. Flowers detained appellant for two minutes of questioning and Solis for six minutes.

We determine, under the totality of the circumstances, that Flowers did not unduly prolong appellant's detention. The recording shows that Flowers diligently investigated a potential conflict in appellant's and Solis's responses regarding the purpose of their trip. Flowers asked pertinent questions in the context of a routine traffic stop; he did not unnecessarily detain appellant solely in the hopes of finding

14

evidence of some other crime. *See Kothe*, 152 S.W.3d at 64-65; *see also Brigham*, 382 F.3d at 508 ("This court has not forbidden questioning [during a routine traffic stop] that included, inter alia, the drivers' and passengers' itinerary as a legitimate investigatory device in the first instance."); *Haas*, 172 S.W.3d at 50 (officer may ask a driver his destination and purpose for his trip during a routine traffic stop, but the driver is not legally obliged to answer).

## II.     Voluntary Consent

Appellant contends that the trial court erred in denying his motion to suppress because the State did not establish by clear and convincing evidence that he voluntarily consented to the search of the truck. Appellant argues that Flowers coerced appellant's consent by (1) retaining appellant's driver's license while questioning him; (2) repeatedly asking for consent after appellant initially refused; and (3) detaining appellant illegally. Because we have determined that appellant's detention was constitutionally reasonable, we reject appellant's argument that Flowers coerced appellant's consent by detaining him illegally.[8]

### A.     Applicable Law

A warrantless search authorized by consent is wholly valid. *Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973). The validity of alleged consent is a question of fact, and the State must prove voluntary consent by clear and convincing evidence. *Fienen v. State*, 390 S.W.3d 328, 333 (Tex. Crim. App. 2012).[9] Consent is not established by "showing no more than acquiescence to a

---

[8] If appellant's detention had been constitutionally unreasonable, we then would have to consider whether appellant gave consent "'by means sufficiently distinguishable to be purged of the primary taint.'" *See Kothe*, 152 S.W.3d at 67 n.48 (quoting *Wong Sun v. United States*, 371 U.S. 471, 487-88 (1963)).

[9] Appellant asserts: "Texas courts require proof of the voluntariness of consent to the warrantless activity of police by clear and convincing evidence." This statement is incomplete. The United States Constitution requires the State to prove the voluntariness of consent by a

claim of lawful authority." *Bumper v. North Carolina*, 391 U.S. 543, 548-49 (1968).

The trial court must consider the totality of the circumstances and "conduct a careful sifting and balancing of the unique facts and circumstances of each case in deciding whether a particular consent to search was voluntary or coerced." *Meekins v. State*, 340 S.W.3d 454, 459 (Tex. Crim. App. 2011); *see Fienen*, 390 S.W.3d at 333. "The ultimate question is whether the person's 'will has been overborne and his capacity for self-determination critically impaired' such that his consent to search must have been involuntary." *Fienen*, 390 S.W.3d at 333 (quoting *Schneckloth*, 412 U.S. at 225-26). "[N]o one statement or action should automatically amount to coercion such that consent is involuntary." *Fienen*, 390 S.W.3d at 333. We uphold the trial court's finding of voluntariness unless it is clearly erroneous. *Id.* at 335.

## B.    Discussion

The trial court found that appellant consented to the search of the truck. We uphold this finding because it is not clearly erroneous. *Id.*

The recording shows that Flowers asked appellant: "You mind if I search the vehicle and its contents?" Appellant answered: "Yes, sir." Flowers repeated his question: "You mind if I search the vehicle?" Appellant replied: "You going to search?" Flowers asked: "You do mind?" Appellant's response is muffled. It is either "Yes" or "Okay." Flowers asked appellant directly: "Can I search the vehicle, yes or no?" Appellant responded: "Yes." Flowers stated: "I can? Okay." Appellant did not reply.

preponderance of the evidence, while the Texas Constitution requires the State to prove the voluntariness of consent by clear and convincing evidence. *See Carmouche v. State*, 10 S.W.3d 323, 331 (Tex. Crim. App. 2000). We apply the stricter Texas standard because appellant asserts that Flowers's search violated both the federal and state constitutions.

Viewing the scene as a whole, Flowers's repeated questioning reasonably can be understood as his attempt to clear up confusion over whether appellant initially consented to a search of the truck. In this light, Flowers did not badger appellant into giving consent. Instead, appellant should have understood that he was free to withhold consent, and that Flowers would not search the truck until he was certain that appellant had consented. *See United States v. Drayton*, 536 U.S. 194, 206 (2002) (officer's question of whether an individual objected to being searched would have indicated to a reasonable person that he or she was free to refuse).

Flowers testified that he held appellant's driver's license while he questioned appellant and while he asked for consent to search the truck. An officer's retention of an individual's driver's license may weigh against a finding of voluntary consent. *See United States v. Dortch*, 199 F.3d 193, 198 (5th Cir. 1999) (consent not voluntary where officer retained individual's driver's license and unconstitutionally detained individual until drug-sniffing dogs arrived); *Vasquez*, 324 S.W.3d at 922.

While Flowers's retention of appellant's driver's license weighs against a finding of voluntary consent, we determine that this factor alone does not establish compulsion. *See Vasquez*, 324 S.W.3d at 922-23 (consent found although an officer held an individual's driver's license while asking for consent). Viewing the evidence in the light most favorable to the trial court's ruling, Flowers repeatedly questioned appellant to clarify whether appellant gave consent. Appellant ultimately stated "Yes" to the question: "Can I search the vehicle, yes or no?" Appellant did not object when Flowers began searching the vehicle. Appellant has not argued other relevant factors which may bear on a determination of voluntariness. *See Reasor v. State*, 12 S.W.3d 813, 818 (Tex. Crim. App. 2000)

17

(factors bearing on voluntariness include the youth of the accused, the education of the accused, the intelligence of the accused, the constitutional advice given to the accused, the length of the detention, the repetitiveness of the questioning, and the use of physical punishment). On this record, we conclude that the trial court's finding of voluntary consent was not clearly erroneous. *See Fienen*, 390 S.W.3d at 333.[10]

We conclude that Flowers's search of the truck was reasonable because appellant consented to the search during a constitutionally justified detention. *See Schneckloth*, 412 U.S. at 222; *Kothe*, 152 S.W.3d at 67. Accordingly, the trial court did not err in denying appellant's motion to suppress. We overrule appellant's sole issue.

## CONCLUSION

Having overruled appellant's sole issue, we affirm the trial court's judgment.

/s/ William J. Boyce
   Justice

Panel consists of Justices Boyce, Jamison, and Donovan.
Do Not Publish — Tex. R. App. P. 47.2(b).

---

[10] Appellant asserts in the conclusion to his brief: "Nothing from the State's proofs or Trooper Flowers's testimony established that a search would entail the partial dismantling of the vehicle." To the extent appellant challenges the scope of Flowers's search, we overrule the issue because it is inadequately briefed; appellant has not presented argument or authorities on the issue. *See* Tex. R. App. P. 38.1(i); *Cardenas v. State*, 30 S.W.3d 384, 393 (Tex. Crim. App. 2000) (overruling inadequately briefed issues).