Affirmed and Memorandum Opinion filed February 3, 2011.

 

In The

 

Fourteenth Court of
Appeals

___________________

 

NO. 14-10-00423-CR

___________________

 

Jason Alan Rodriguez, Appellant

 

V.

 

The State of Texas, Appellee



 



 

On
Appeal from the County Criminal Court at Law No. 15

Harris County,
Texas



Trial Court Cause No. 1648129

 



 

 

MEMORANDUM OPINION

            Pursuant to a plea bargain, appellant Jason Alan
Rodriguez, pleaded guilty to misdemeanor driving while intoxicated.  The trial
court assessed punishment at 180 days’ confinement and a fine of $500 and
placed Rodriguez on community supervision for one year.  In two issues, Rodriguez
challenges the trial court’s denial of his motion to suppress evidence.  We
affirm.

I

Following
a traffic stop, Webster Police Officer T. Phan arrested Rodriguez for operating
a motor vehicle in a public place while intoxicated.  Rodriguez filed a motion
to suppress all evidence seized as a result of the arrest.  He argued, in part,
that (1) he “was seized without any reasonable suspicion and/or adequate
reasonable suspicion that he was engaged in criminal activity,” (2) the
evidence the State would offer “was not discovered pursuant to a reasonable
investigative detention,” and (3) the stop and seizure violated his rights
under the Fourth Amendment of the United States Constitution and article I,
section 9, of the Texas constitution.

Phan, called by the
defense, was the only witness at the suppression hearing.[1]  Viewed in the
light most favorable to the trial court’s ruling, Phan’s testimony established
the following facts.[2]

At approximately 2:20
a.m. on December 16, 2009, Phan stopped Rodriguez for speeding on the IH-45
feeder road after radar indicated he was traveling at seventy-four miles per
hour in a forty-five mile-per-hour zone, or twenty-nine miles per hour over the
posted speed limit.  Rodriguez had a male passenger with him.  Phan initially
approached the vehicle from the passenger side and talked to Rodriguez about
speeding.  At that point, Rodriguez and the passenger told Phan where they were
coming from, and Phan clearly understood them.  Phan noticed the odor of
alcohol coming from the passenger compartment of the vehicle at that time and
suspected he might “have an intoxicated driver.”  Phan did not ask the men any
further questions.

Phan returned to his
patrol car and ran a computerized license and NCIC records check for both occupants. 
The records for both men came back clear.

After the computer
check, Phan returned to the driver’s side of Rodriguez’s vehicle and asked Rodriguez
“[t]o step out to see if he was all right to drive” and to “[d]o field sobriety
tests.”  Phan continued to smell alcohol as he got closer to Rodriguez, and the
smell was stronger when Rodriguez was talking.  Phan did not know that the alcohol
he initially had smelled in the vehicle was specific to Rodriguez until he got Rodriguez
out of the vehicle.  Phan talked to Rodriguez before having him perform the
field sobriety tests, and Rodriguez informed Phan he “[w]as coming from a local
bar,” namely The Dock’s Bar.  Phan asked Rodriguez how much he had to drink,
and Rodriguez “[c]laimed to have consumed two beers.”

Phan, who was certified
to administer the horizontal-gaze-nystagmus (HGN) test, first administered that
field sobriety test to Rodriguez.  Phan shined his flashlight in Rodriguez’s
eyes and noticed Rodriguez’s eyes were red, bloodshot, and “glossy” and Rodriguez’s
speech was slurred.  Phan observed six clues during the HGN test, indicating Rodriguez
had a possible blood-alcohol content of .08 or higher.  Phan next administered
the walk-and-turn test and observed four clues, also indicating Rodriguez had a
possible blood-alcohol content of .08 or higher.  Finally, Phan administered
the one-leg-stand test and observed two clues, again indicating a level of
intoxication of .08 or higher. At that point, Phan felt Rodriguez was
intoxicated, and arrested him.  He also arrested the passenger for public
intoxication.

The trial court denied
the motion to suppress, stating, “The officer had—in my judgment, having
smelled alcohol coming from the vehicle after stopping him, and an automobile
going 30 miles over the speed limit had a duty to investigate.  He smelled
alcohol, it was his duty to check to see whether that driver is impaired or
not.”  Rodriguez did not request that the trial court prepare findings of fact
and conclusions of law, and, consequently none appear in the appellate record.

II

Rodriguez raises two
issues.  In issue one, he argues the trial court erred “in finding that the
prosecution met its burden of proving that Webster Police Officer Phan had
reasonable suspicion to prolong the traffic stop of Rodriguez beyond the length
and scope necessary to fulfill the purpose of the original stop under the
Fourth Amendment of the United States Constitution.”  In issue two, he frames
the identical issue under article I, section 9, of the Texas constitution.  He
does not, however, provide specific arguments or authorities to distinguish his
state-law claim from his federal-law claim.  Accordingly, we will limit our
analysis to the Fourth Amendment.  See Hubert v. State, 312 S.W.3d 554,
558 n.8 (Tex. Crim. App. 2010) (“Because the briefs do not provide specific
arguments or authorities to distinguish the state-law claims from the
federal-law claims, we will limit our analysis to the Fourth Amendment.”).

A

            We
generally review a trial court’s decision to grant or deny a motion to suppress
using an abuse-of-discretion standard.  Swain v. State, 181 S.W.3d 359,
365 (Tex. Crim. App. 2005).  During the suppression hearing, the trial court is
the exclusive trier of fact and judge of the witnesses’ credibility.  State
v. Ross, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000); Mason v. State,
116 S.W.3d 248, 256 (Tex. App.—Houston [14th Dist.] 2003, pet. ref’d).  An
appellate court affords almost total deference to the trial court’s
determination of historical facts supported by the record, especially when the
trial court’s findings are based on an evaluation of credibility and demeanor.  Johnson
v. State, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002) (citing Guzman v.
State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)).  We afford the same amount
of deference to a trial court’s ruling on mixed questions of law and fact if
the resolution turns on evaluating credibility and demeanor.  Johnson,
68 S.W.3d at 652; Guzman, 955 S.W.2d at 89.  We review de novo, however,
those mixed questions of law and fact not turning on credibility or demeanor.  Johnson,
68 S.W.3d at 653 (citing Guzman, 955 S.W.2d at 89).  If the trial court’s
ruling is reasonably supported by the record and is correct on any theory of
law applicable to the case, the reviewing court must sustain it.  Villarreal
v. State, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996); Flores v. State,
172 S.W.3d 742, 748 (Tex. App.—Houston [14th Dist.] 2005, no pet.).

            In
reviewing a trial court’s ruling on a motion to suppress, we view the evidence
in the light most favorable to the trial court’s ruling.  State v. Kelly,
204 S.W.3d 808, 818 (Tex. Crim. App. 2006).  If, as here, the trial court makes
no explicit fact findings, we imply the necessary fact findings that would
support the trial court’s ruling if the evidence (viewed in the light most
favorable to the trial court’s ruling) supports these implied fact findings.  Id.
at 819.

B

The Fourth Amendment
protects individuals from unlawful searches and seizures. U.S. Const. amend.
IV.  A traffic stop is considered a Fourth Amendment seizure.  Berkemer v.
McCarty, 468 U.S. 420, 436–37 (1984); see Davis v. State, 947
S.W.2d 240, 243–45 (Tex. Crim. App. 1997).  Because traffic stops are analogous
to investigative detentions, they are analyzed under the two-prong test in Terry
v. Ohio, 392 U.S. 1, 19–20 (1968); State v. Williams, 312 S.W.3d
276, 280 (Tex. App.—Houston [14th Dist.] 2010, no pet.).  To be a valid traffic
stop, the stop must be reasonable.  Davis, 947 S.W.2d at 244.  A
detention is reasonable if (1) the police officer’s actions were justified at
the stop’s inception; and (2) the stop was reasonably related in scope to the
circumstances that initially justified the stop.  Terry, 392 U.S. at
19-20; Kothe v. State, 152 S.W.3d 54, 63 (Tex. Crim. App. 2004). 

Once the reason for the
traffic stop has been satisfied, the officer may not use the detention as a “‘fishing
expedition for unrelated criminal activity.’”  Vasquez v. State, 324 S.W.3d
912, 919 (Tex. App.—Houston [14th Dist.] 2010, no pet. h.) (quoting Spight
v. State, 76 S.W.3d 761, 766 (Tex. App.—Houston [1st Dist.] 2002, no pet.)). 
Generally, it is lawful to detain and question an individual while the computer
check is pending.  Id.  However, once the officer completes the computer
check and knows the driver has a valid license with no outstanding warrants and
the car is not stolen, the traffic-stop investigation is finished.  Kothe,
152 S.W.3d at 63–64; Vasquez, 324 S.W.3d at 919.  It is at this time the
detention must end and the driver must be permitted to leave.  Kothe,
152 S.W.3d at 64; Vasquez, 324 S.W.3d at 919.

Nevertheless, once an
officer concludes the investigation of the conduct that initiated the traffic
stop, he may continue to detain a person if he has reasonable suspicion to
believe another offense has been or is being committed.  Davis, 947
S.W.2d at 244.  “‘Reasonable suspicion’ exists if the officer has specific
articulable facts that, when combined with rational inferences from those
facts, would lead him to reasonably suspect that a particular person has
engaged or is (or soon will be) engaging in criminal activity.”  Garcia v.
State, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001).

C

            Rodriguez
does not challenge the reasonableness of the initial traffic stop.  Instead, he
contends that the traffic stop was complete when the computer check “came back
clear” and that Officer Phan prolonged the stop “beyond the necessary length
and scope needed to effectuate the purpose of the stop . . . .”  He further argues
the odor of alcohol alone does not establish reasonable suspicion that someone
is intoxicated.[3] 
We turn first to the facts of which Phan was aware when he ran the computer
check and before he requested Rodriguez to perform the field sobriety tests. 
We then consider his decision to delay performing the tests until after he
obtained the results of the computer check.

            Viewed
in the light most favorable to the trial court’s ruling, the evidence at the
suppression hearing established Phan was aware of at least three articulable
facts when he asked Rodriguez to perform the field sobriety tests.  First, Rodriguez
was driving twenty-nine miles per hour in excess of the posted speed of
forty-five miles per hour.  Speeding can contribute to reasonable suspicion of
driving while intoxicated.  See, e.g., State v. Cullen,
227 S.W.3d 278, 282 (Tex. App.—San Antonio 2007, pet. ref’d); Arthur v.
State, 216 S.W.3d 50, 55–56 (Tex. App.—Fort Worth 2007, no pet.); State
v. $30,660.00, 136 S.W.3d 392, 399–401 (Tex. App.—Corpus Christi 2004, pet.
denied).

            Second,
it was approximately 2:20 a.m.  The time of night can also contribute to
reasonable suspicion of driving while intoxicated.  See $30,660.00,
136 S.W.3d 392 at 399–401.[4]

            Third,
there was an odor of alcohol coming from the passenger compartment of the car. 
The odor of alcohol can constitute, or contribute to, reasonable suspicion of
intoxication.  See Sanchez v. State, 582 S.W.2d 813, 814–15 (Tex. Crim. App.
[Panel Op.] 1979); State v. Brabson, 899 S.W.2d 741, 749 (Tex.
App.—Dallas 1995), aff’d, 976 S.W.2d 182 (Tex. Crim. App. 1998).

Given these facts, we
conclude Officer Phan had reasonable suspicion Rodriguez was intoxicated before
he requested Rodriguez to perform the field sobriety tests.

We turn now to Phan’s
decision to perform the tests after he had run the computer check.  Phan was
patrolling alone.  There were two men in the car he had stopped.  The men would
necessarily have to exit the car in order to perform the tests.  That Phan, who
had reasonable suspicion Rodriguez was intoxicated, chose not to conduct field
sobriety tests until after he checked the men’s records does not alter the
conclusion that the length of the detention was reasonable in the present
case.  See Kothe, 152 S.W.3d at 66 (“[T]he order of events, while
relevant to the legal determination of ‘reasonableness,’ is not in itself
determinative.”); United States v. Brigham, 382 F.3d 500, 511 (5th Cir.
2004) (en banc) (“Computerized license and registration checks are an efficient
means to investigate the status of a driver and his auto, but they need not be
pursued to the exclusion of, or in particular sequence with, other efficient
means.”).

For the preceding
reasons, we overrule Rodriguez’s first and second issues.

* * * 

            Having
overruled Rodriguez’s two issues, we affirm the judgment.

 

                                                                                    

                                                                        /s/        Jeffrey
V. Brown

                                                                                    Justice

 

 

 

Panel consists of Justices
Brown, Boyce, and Jamison.

Do
Not Publish — Tex. R. App. P. 47.2(b).

 

 









[1] The defense also played
State’s exhibit one, a video recording of the traffic stop, but there is no
indication the exhibit was admitted into evidence.  Although the video was not
initially part of the appellate record, the State filed a motion to supplement
the record with the videotape, and this court granted the motion.  Rodriguez
does not challenge this court’s ruling.





[2] See State v. Kelly,
204 S.W.3d 808, 818 (Tex. Crim. App. 2006).





[3] In support, Rodriguez
cites Domingo v. State, 82 S.W.3d 617 (Tex. App.—Amarillo 2002, no
pet.).  Domingo involved a citation for public intoxication, and, unlike
the present case, the only articulable fact was the odor of alcohol.





[4] On direct examination by
the defense, Phan testified that, during the initial encounter, he asked the
occupants where they were coming from, they told him, and he clearly understood
them.  On cross-examination by the State, Phan testified as follows:

Q
[by prosecutor]        Okay. Now, when you approached the car, you smelled
alcohol coming from the car, correct?

A         Yes,
ma’am.

Q         Okay.
And did you suspect at that time that you may have an intoxicated driver?

A         Yes,
ma’am.

Q         Okay. 
What did you do because of that?

A         I
asked the driver to step out of the vehicle so we could do field sobriety
exercises.

Q         When
you got closer to the driver, did you continue smelling the alcohol?

A         Yes,
ma'am.

Q         Was
it stronger when he was talking?

A         Yes,
ma’am.

Q         At
that point, did you notice anything about his eyes?

A         Yes,
his eyes were bloodshot.

Q         Okay.
And did you talk to him before you performed the field sobriety tests?

A         Yes.

Q         Did
he say where he was coming from?

A         He
was coming from a local bar.

Q         Okay. 
What was the bar?

A         The
Docks Bar is what he said.

From the context of the questioning, it is difficult
to determine when Phan first learned the occupants had come from a local bar. 
It would not be unreasonable to infer he learned this fact during the initial
encounter on the passenger’s side of the car.