**Affirmed and Memorandum Opinion filed March 6, 2012.**



In The

# Fourteenth Court of Appeals

NO. 14-10-00941-CR
NO. 14-10-00942-CR

**ERIC LAMON JOHNSON, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 506th District Court
Waller County, Texas
Trial Court Cause Nos. 09-06-13237 & 09-06-13238**

## MEMORANDUM OPINION

Appellant Eric Lamon Johnson appeals his conviction for possession of a controlled substance, claiming the trial court erred in denying his motion to suppress evidence and claiming to have received ineffective assistance of counsel. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Appellant was charged in two separate indictments with possession of a controlled substance: (1) in case number 13237, appellant was charged with possession of cocaine; and (2) in case number 13238, appellant was charged with possession of codeine. Each charge was enhanced by a prior felony conviction.

Appellant filed a single motion to suppress evidence in both cases. At the suppression hearing, a sheriff's deputy testified that he observed a vehicle leave a house known for narcotics activity. The deputy testified that driver of the vehicle turned off the roadway, as if attempting to "duck" detection by the deputy. After conducting a record search on his computer using the vehicle's license plate, the deputy could not confirm whether the vehicle was covered by current insurance. The deputy turned his patrol unit around and saw the same vehicle back on the roadway again. According to the deputy, he pushed a button on his radar equipment to detect the speed of the vehicle. Equipment mounted in the deputy's patrol unit recorded a video of the deputy's actions and statements. The record reflects that, at the suppression hearing, the deputy narrated what happened on the roadway as the video played; the deputy identified the precise time on the video when the radar notified him by sound of the vehicle's speed. As reflected at that particular point in the video, the radar system sounded a quiet "beep," detecting the vehicle's speed. The video reflects that upon hearing this sound, the deputy turned to follow the vehicle and activated the patrol unit's emergency lights to initiate a traffic stop. The deputy testified that the vehicle was traveling 39 miles an hour in a zone with a posted speed of 35 miles an hour.

According to the deputy, and as reflected in the video, he approached the driver of the vehicle and asked for the driver's identification and insurance paperwork. The deputy did not explain that he stopped the vehicle for speeding. The driver, appellant, recognized the deputy and identified the deputy by name. The deputy confirmed his identity and explained to appellant that a records check showed the insurance on the vehicle as being "out." The deputy also referred to the insurance as being "unconfirmed," and indicated that reason as one basis deputies may use to initiate a traffic stop. Appellant produced identification and valid insurance. The deputy testified, and the video reflects, that he told appellant he planned to "write up a warning" and returned to the patrol unit. According to the deputy's testimony at the suppression hearing, the warning was for exceeding the posted speed limit.

2

The deputy returned to the patrol unit to request information about appellant's driver's license, search for outstanding warrants, begin writing the warning citation, and fill-out a form requesting consent to search. According to the deputy, he had "indicators" that suggested appellant was hiding contraband, such as the facts that (1) appellant had just left a known "drug house," and (2) based on information the deputy had from an unnamed informant, appellant was involved with narcotics. As reflected in the video, several times when speaking with appellant, the deputy referred to information he had about appellant suggesting that appellant was involved in narcotics activities.

While waiting for the vehicle and insurance information, the deputy returned to appellant's vehicle and asked appellant to exit the vehicle. As reflected in the video, the deputy then asked for appellant's consent to a pat-down for weapons, and appellant agreed. In response to the deputy's questions, appellant acknowledged that he was carrying a few hundred dollars. Appellant removed over $2,000 from his pocket to show the deputy.

At the same time the deputy was speaking with appellant, the dispatcher radioed the patrol unit to confirm that appellant had no outstanding warrants. The dispatcher then relayed appellant's criminal background. The deputy observed a white substance on appellant's hands that appeared to the deputy to be cocaine. As reflected in the video, the deputy retrieved a test kit from his patrol unit to wipe appellant's hands. The test did not indicate the presence of cocaine.

The deputy testified that he considered the amount of money appellant carried as another "indicator" leading the deputy to believe that there could be narcotics in the vehicle. As reflected in the video, the deputy asked for appellant's consent to search the vehicle; appellant replied that the vehicle belonged to his girlfriend. When the deputy expressed his belief that "something is in that car," appellant denied that anything was in the car. Appellant then invited the deputy to search the vehicle, stating "go ahead and search it." Appellant refused the deputy's request to sit in the patrol unit during the

3

search. Instead, appellant stood in front of the patrol unit as the deputy searched the vehicle. Inside the vehicle, the deputy recovered a small prescription bottle with the label removed. The contents inside the bottle were later confirmed to be codeine syrup. Upon seeing the deputy's discovery, appellant cursed at the deputy. The deputy ordered appellant to sit in the back of the patrol unit.

The deputy continued to search appellant's vehicle, but did not find any other contraband. As reflected in the video, the deputy returned to the patrol unit to speak with appellant and observed a white substance where appellant was seated. When the deputy asked appellant if he had placed anything inside the patrol unit, referring to the substance on the seat, appellant indicated that he was smoking and left cigarette ashes on the seat. The substance field-tested positive for cocaine. The deputy conducted another field test of appellant's hands with a cotton swab; the results indicated the presence of cocaine.

When the deputy told appellant of the test results, appellant fled on foot. He was captured in an adjacent field. Officers searching the field located a plastic bag containing the residue powder of cocaine, and this discovery led to appellant's arrest. According to the record, approximately 1.3 grams of crack cocaine rocks were found in the field along appellant's path of flight. As reflected in the video, the entire length of time appellant was detained before his arrest was twenty-two minutes.

Regarding his motion to suppress, appellant alleged the deputy lacked probable cause for the search, and, for this reason, the evidence from the search should be suppressed as it was the result of an unreasonable and warrantless seizure. The trial court denied appellant's motion, finding that the deputy had sufficient probable cause for the initial stop based on the deputy's observations of the vehicle, the "ducking," and the radar-detected speed of the vehicle. After the initial stop, appellant consented to the search that yielded the contraband.

Without an agreed recommendation from the State on punishment, appellant judicially confessed to committing the offenses alleged in both indictments. Appellant

4

signed documents reflecting his judicial confession and statement that he was waiving and abandoning all motions, pleadings, and objections before the entry of his pleas. These documents contain the following pertinent statements:

> A plea agreement exists in this cause as follows:
>
> 4. Defendant agrees to plead guilty in to the above specified offense(s), true to enhancement and special issues, if any, in the indictment or information, judicially confess, and waive any right to a motion for new trial and appeal.
>
> State agrees to recommend: no recommendation by State; open plea of guilty to be sentenced by the judge.

On the plea papers is the notation, "no recommendation by State; open plea of guilty to be sentenced by the judge," hand written by the trial judge. At a plea hearing, appellant pleaded "guilty" to the charged offenses and "true" to the enhancements.

At a sentencing hearing three months later, after admonishing appellant of the consequences of his pleas, the trial court found appellant guilty of both charged offenses. The trial court found the enhancements to be true and sentenced appellant to sixteen years' confinement in each case, with the sentences to run concurrently. The trial court certified appellant's right to appeal in both cases, noting in both cases, "it is not a plea-bargain case, and the defendant has the right to appeal." Appellant filed a notice of appeal, seeking to appeal the motion to suppress, his plea, and the sentences.

### ISSUES AND ANALYSIS

**Did appellant waive the right to appeal?**

As a preliminary matter, as raised partially in appellant's second issue and as made the basis of his ineffective-assistance-of-counsel claim in his third issue, we consider whether appellant has waived his right to appeal and, if so, whether that waiver is the result of ineffective assistance of counsel.

A defendant in any criminal action has a right to appeal. Tex. Code Crim. Proc. Ann. art. 44.02. A valid waiver of appeal, whether negotiated or non-negotiated, will

5

prevent a defendant from appealing without the consent of the trial court. *Monreal v. State*, 99 S.W.3d 615, 622 (Tex. Crim. App. 2003). Although negotiated waivers of the right to appeal are valid, non-negotiated waivers of the right to appeal are valid only if the defendant waived the right of appeal, knowing with certainty the punishment that would be assessed. *See id.* at 621. Because there is no plea bargain in this case, and the waiver was made before sentencing, the waiver could not have been made by appellant knowing with certainty the punishment that would be assessed. *See Ex parte DeLaney*, 207 S.W.3d 794, 796–97 (Tex. Crim. App. 2006). Thus, there is no valid waiver of the right to appeal. *See id.*; *Tufele v. State*, 130 S.W.3d 267, 270 (Tex. App.—Houston [14th Dist.] 2004, no pet.). Likewise, both bargaining and non-bargaining defendants can appeal rulings on written pretrial motions, as well as jurisdictional issues. *See Monreal*, 99 S.W.3d at 620 (referring to *Young v. State*, 8 S.W.3d 656 (Tex. Crim. App. 2000) and Texas Rule of Appellate Procedure 25.2(b)). Appellant has the right to appeal. Therefore, to the degree appellant claims in his third issue that he received ineffective assistance of counsel as a result of waiver of his right to appeal, we no longer consider that issue because it is moot.

**Did the trial court err in denying appellant's motion to suppress?**

In his first two issues, appellant claims the trial court erred in denying his motion to suppress. We review a trial court's ruling on a motion to suppress under an abuse-of-discretion standard. *See Villareal v. State*, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996). At a hearing on a motion to suppress, the trial court is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990). We afford almost complete deference to the trial court's determination of historical facts supported by the record, as well as to mixed questions of law and fact dependent on the determination of a witness's credibility and demeanor. *See State v. Ross*, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000). We consider issues that present purely legal questions under a de novo standard. *See id.*

6

### *The Initial Traffic Stop*

In his first issue, appellant claims that the initial traffic stop was unreasonable because the deputy did not have probable cause to believe an offense was being committed.

A peace deputy is justified in conducting a traffic stop when an officer has reasonable suspicion or probable cause to believe that a traffic violation has occurred. *See Woods v. State*, 956 S.W.2d 33, 35 (Tex. Crim. App. 1997). Speeding is a violation of the Texas Transportation Code. *See* Tex. Transp. Code Ann. § 545.351 (West 2011). At the suppression hearing, the deputy testified that while operating the vehicle, appellant exceeded the posted speed limit, noting that radar equipment detected appellant's vehicle traveling 39 miles an hour in a zone posted for 35 miles an hour. The video played at the suppression hearing reflects that the deputy told appellant of his plans to "write up a warning." At the suppression hearing, the deputy clarified that the warning was a warning citation for speeding. The deputy had probable cause to initiate a traffic stop, and the stop was reasonable. *See* Tex. Code Crim. Proc. Ann. art. 14.01(b) ("A peace officer may arrest an offender without a warrant for any offense committed in his presence or within his view."); *Armitage v. State*, 637 S.W.2d 936, 939 (Tex. Crim. App. 1982) ("It is well settled that a traffic violation committed in an officer's presence authorizes an initial stop.").

Appellant claims that the video controverts the deputy's testimony that he initiated the traffic stop based on the fact that appellant was speeding. The video reflects that before the deputy activated his emergency equipment to effect the traffic stop, there is a "beep" heard in the background. The deputy testified at the suppression hearing that the sound alerted him of the vehicle's detected speed. In the video, after stopping appellant's vehicle, the deputy does not explain the basis for the stop. As reflected in the video, although the deputy indicated that his records could not confirm insurance coverage on the vehicle, appellant provided proof of valid insurance, and the deputy explained that he

7

was going to give appellant a warning. At the suppression hearing, the deputy testified that the warning he planned to write was a warning citation for speeding. The trial court was free to consider whether the deputy actually issued a citation in determining the credibility of his testimony, and as the factfinder, the trial court was at liberty to weigh this evidence in making factual determinations. *See Kelly v. State*, 331 S.W.3d 541, 550–51 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd). Because the sound of the radar system was audible on the video before the deputy activated the patrol unit's lights, and the deputy's statement that he planned to issue a warning citation for speeding, the video does not controvert the deputy's testimony; rather, the video supports the deputy's testimony.

### *Consent to Search the Vehicle*

In a second issue, appellant asserts that his consent to search the vehicle was not effective because it was obtained as the result of the traffic stop, which appellant characterizes as the "initial illegality." Appellant cites the factors recited in *Brick v. State*, 738 S.W.2d 676, 678 (Tex. Crim. App. 1987), in support of his claim that the "taint" of the allegedly illegal, initial detention had not dissipated by the time he gave his consent. *Brick* sets forth a number of factors to consider when consent follows an illegal arrest to determine whether consent has been tainted by the illegal police conduct. *See id.* at 680–81. Because we already have determined that the deputy was justified in conducting the initial traffic stop, appellant's reliance on *Brick* is misplaced.

In the absence of a warrant or probable cause to search appellant's vehicle, the validity of the deputy's search rests on appellant's purported consent. *See Vasquez v. State*, 324 S.W.3d 912, 921 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd) (involving an accused who was stopped for speeding and voluntarily consented to a search of his vehicle). "To be valid, consent to search must be free and voluntary." *U.S. v. Kelley*, 981 F.2d 1464, 1470 (5th Cir. 1993); *see Vasquez*, 324 S.W.3d at 921. The State must show by clear and convincing evidence that appellant voluntarily consented to

8

the search so as to validate his consent, thereby rendering the evidence admissible. *See Carmouche v. State*, 10 S.W.3d 323, 331 (Tex. Crim. App. 2000); *Vasquez*, 324 S.W.3d at 921. In order to be voluntary, the consent to search must "not be coerced, by explicit or implicit means, by implied threat or covert force." *Carmouche*, 10 S.W.3d at 331. Consent obtained through duress or coercion is deemed involuntary. *Allridge v. State*, 850 S.W.2d 471, 493 (Tex. Crim. App. 1991).

Although appellant does not appear to challenge the voluntariness of his consent, out of an abundance of caution, we consider whether appellant's will was "overborne," by assessing "the totality of all the surrounding circumstances—both the characteristics of the accused and the details of the interrogation." *Schneckloth v. Bustamonte*, 412 U.S. 218, 226, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973). Some relevant factors include: (1) the youth of the accused; (2) the education of the accused; (3) the intelligence of the accused; (4) the constitutional advice given to the accused; (5) the length of the detention; (6) the repetitiveness of the questioning; and (7) the use of physical punishment. *See Reasor v. State*, 12 S.W.3d 813, 818 (Tex. Crim. App. 2000) (citing *Schneckloth*, 412 U.S. at 226, 93 S. Ct. 2041; *Vasquez*, 324 S.W.3d at 923. If the record supports a finding of clear and convincing evidence that the consent to search was freely and voluntarily given, an appellate court will not disturb the finding. *See Carmouche*, 10 S.W.3d at 331.

Appellant suggests that his consent was not effective because the deputy sought consent to search the vehicle within three minutes of the initial traffic stop. There are no bright-line time limits for traffic stops; appellant's consent to search was requested within a legal detention period and did not occur during an illegal detention. *See Vasquez*, 324 S.W.3d at 923 (providing that detention lasting roughly twenty minutes from initial stop to discovery of cocaine inside accused's vehicle was reasonable). Appellant also argues that his consent was not valid because it was given after the deputy stated he "heard a lot about" appellant and after finding that appellant carried a large amount of cash. Even if an officer concludes the investigation of the conduct that prompted the traffic stop,

continued detention is permissible if the deputy has reasonable suspicion to believe another offense has been or is being committed. *Davis v. State*, 947 S.W.2d 240, 244 (Tex. Crim. App. 1997); *Vasquez*, 324 S.W.3d at 919. As reflected in the twenty-seven-minute video and according to the deputy's testimony, the deputy first investigated the traffic stop and continued the detention because of "indicators" he had that led him to believe appellant was hiding contraband. Among these indicators was information from an unknown informant and the fact that appellant carried a large sum of cash after leaving a house known for narcotics activity. Appellant does not challenge the reasonableness of the continued detention or the length of his detention.

Appellant complains he was not informed that he could refuse a request for consent to search the vehicle. An officer's failure to inform the accused that consent can be refused may be considered in determining the voluntariness of consent. *Johnson v. State*, 68 S.W.3d 644, 653 (Tex. Crim. App. 2002). But, the absence of such information does not render an accused's consent involuntary. *Id.*

Appellant also points to the deputy's repeated requests to search the vehicle. This factor, alone, is not conclusive, but could weigh against a finding of voluntariness. *See Vasquez*, 324 S.W.3d at 923. In taking into account other relevant factors, we conclude that the record supports a finding that appellant's consent was freely and voluntarily given. At the time of the suppression hearing, appellant was thirty-five years old; he had earned a GED during his incarceration for an earlier offense. While the record does not provide proof of appellant's education or intelligence, one may reasonably infer that appellant is a normal, average adult individual. *See id.* The video reflects that appellant spoke English and was capable of understanding and communicating with the deputy on the day of the detention. *See id.* The deputy testified, and the video reflects, that appellant freely and voluntarily gave consent to search the vehicle. *See id.* The record does not indicate any psychological or physical coercion or punishment. *See id.* (concluding consent to search vehicle was voluntary and freely given). Considering the

10

totality of the circumstances, the record supports the trial court's finding that appellant's consent was voluntary. *See Vasquez*, 324 S.W.3d at 924.

Appellant suggests that the deputy's conduct in swabbing his hands the first time without his consent was an illegal search that was relevant to the validity of his subsequent consent to search the vehicle.[1] The field test yielded negative results for the presence of cocaine. Appellant has provided no argument, analysis, or authority in support of his contention that swabbing of the hands without consent constituted an illegal search. *See* Tex. R. App. P. 38.1(i). Nevertheless, this argument lacks merit under the facts of this case. Appellant's hands, covered in a white powdery substance, were within the deputy's plain view during the lawful traffic stop. If an officer has a lawful right to be in a particular location, observes an item in plain view, and has probable cause to believe that item constitutes contraband, the deputy has authority to seize it without the necessity of a warrant. *See Walter v. State*, 28 S.W.3d 538, 539–41 (Tex. Crim. App. 2000) (involving deputy who observes narcotics in plain view while a warrant check was pending during a routine traffic stop). The deputy believed that the substance constituted evidence of contraband. Although the deputy could not dispel his belief until after conducting a field test of the substance, appellant has not provided any argument or analysis to suggest how the negative field-test results from the reasonable search affected the validity of his subsequent consent to search the vehicle. *See* Tex. R. App. P. 38.1(i).

_____

[1] Appellant cites *Cupp v. Murphy*, 412 U.S. 291, 93 S. Ct. 2000, 36 L. Ed. 2d 900 (1973) for support that an illegal search is relevant to the validity of his consent to search the vehicle. In *Cupp*, however, a search of a suspect's fingernail scrapings without the suspect's consent was deemed reasonable given the existence of probable cause, the limited intrusion during the stationhouse detention, and the readily destructibility of the evidence. *See id.* at 296. Appellant's reliance on *Cupp* is not supported on these facts. Appellant also cites the case of *Webb v. State*, 07-98-0164-CR, 1999 WL 72124 (Tex. App.—Amarillo Feb. 10, 1999, no pet.) (mem. op., not designated for publication), in support of his claim that an illegal search is relevant to the validity of his consent to search the vehicle because it discusses consent to swab an accused's hands. This case is not published and thus has no precedential value. Moreover, contrary to appellant's assertion, this case does not support his claim and is inapplicable to the case under review.

Viewing the evidence in the light most favorable to the trial court's ruling, the record supports the trial court's denial of appellant's motion to suppress. *See Vasquez*, 324 S.W.3d at 924. The trial court did not act arbitrarily or unreasonably, and thus, did not abuse its discretion by denying appellant's motion to suppress. *See id.* We overrule appellant's first two issues.

The trial court's judgment is affirmed.


/s/    Kem Thompson Frost
Justice


Panel consists of Justices Frost, Seymore, and Jamison.

Do Not Publish — Tex. R. App. P. 47.2(b).