**Affirmed and Memorandum Opinion filed September 19, 2013.**



In The

# Fourteenth Court of Appeals

_____

## NO. 14-12-00759-CR
_____

**KEVIN DWAYNE CROOKS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 182nd District Court
Harris County, Texas
Trial Court Cause No. 1320007**

## M E M O R A N D U M   O P I N I O N

Kevin Dwayne Crooks pled guilty to theft and in accordance with a plea agreement was sentenced to five years in prison. In a single issue, appellant challenges the trial court's denial of his motion to suppress. We affirm.

We review a trial court's ruling on a motion to suppress under a bifurcated standard. *Vasquez v. State,* 324 S.W.3d 912, 918 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd) (citing *Guzman v. State,* 955 S.W.2d 85, 89 (Tex. Crim.

App. 1997)). The trial court is the sole finder of fact and judge of the credibility of witnesses and the weight to be given their testimony. *Wiede v. State,* 214 S.W.3d 17, 24-25 (Tex. Crim. App. 2007). We give almost total deference to the trial court's determination of historical facts, but we review *de novo* the court's application of the law to the facts. *Id.* at 25; *see also Amador v. State,* 221 S.W.3d 666, 673 (Tex. Crim. App. 2007). We view the evidence presented on a motion to suppress in the light most favorable to the trial court's ruling. *State v. Kelly,* 204 S.W.3d 808, 818 (Tex. Crim. App. 2006).

Two witnesses testified at the hearing on appellant's motion to suppress, Officer Mario Escobedo and Officer Richard Huerta of the Houston Police Department. The record reflects that Officer Escobedo, while working security in a parking lot for a Randall's shopping center, approached appellant after observing suspicious activity. Officer Escobedo observed a gray truck moving slowly; the truck stopped, backed up, and parked next to a black truck. The parking lot was nearly empty. Appellant got out of his truck and stood between the two trucks. Appellant was looking inside the black truck and looked at the keyhole of the driver's side. It appeared appellant had something in his hand, underneath his shirt. Officer Escobedo parked and approached appellant. When appellant saw Officer Escobedo, he "jumped" back inside his truck and threw his arm behind him. Officer Escobedo did not see anything in his hand, but thought appellant possibly had a weapon. Officer Escobedo pulled his gun out of his holster, but did not point it towards appellant. Officer Escobedo told appellant, "Stop. Let me see your hands. Let me see what you're doing." Appellant cooperated and Officer Escobedo holstered his gun.

Officer Escobedo walked to the passenger's side of the vehicle and asked appellant what he was doing. Appellant said he was going to urinate between the

two trucks and was waiting for a woman, whose name he did not know, to come outside from Randall's. Officer Escobedo asked appellant for his identification and contacted dispatch for a license check.

Officer Escobedo looked into the passenger's side and observed a black briefcase on the floorboard. Appellant said it was his laptop computer that he had purchased "down the road" for $250 from an unknown person. Officer Escobedo asked for and was given consent to search the vehicle.

There were no outstanding warrants on appellant. Officer Escobedo testified it took dispatch five to ten minutes to run the check and "at that point I had already discovered the laptop."

Officer Escobedo searched the laptop bag and found two wallets. One of the wallets contained a driver's license that did not belong to appellant. Officer Escobedo called the number on business cards found in the briefcase, and the phone was answered by complainant, whose laptop bag had been stolen from a restaurant parking lot approximately half a mile away within 20 minutes of the time that Officer Escobedo encountered appellant. Officer Huerta was at the scene of the burglary, gathering the complainant's information. Officer Escobedo told complainant he had found some property and asked if a black briefcase had been taken from complainant. The complainant said it had and he was brought to the Randall's parking lot. The complainant matched the identification in one of the wallets, his business cards were in the briefcase, and he identified the laptop as his property.

When Officer Huerta arrived as backup, appellant was placed into the back of a patrol car. Officer Escobedo continued to search appellant's vehicle "where he had put his hand back quickly" and behind the seat found a black leather glove,

3

a screwdriver, a small flashlight, and a metal "punch" — a cylindrical device that can be used to shatter a window.

Appellant concedes the initial contact was lawful but claims the detention became illegal once the license check revealed that he had no outstanding warrants. Appellant argues that because his consent to search was given after the detention became illegal, his consent to the search of his vehicle was involuntary. We disagree.

Officer Escobedo was investigating whether appellant was engaged in or attempting to engage in criminal activity, specifically burglarizing the black truck. At the time appellant consented to the search, the record does not reflect that the purpose of the investigative detention had ceased, that Officer Escobedo's suspicions were dispelled, or that Officer Escobedo had learned the results of the warrant check. Accordingly, appellant's continued detention was not illegal. *See Davis v. State*, 947 S.W.2d 240, 244-45 (Tex. Crim. App. 1997).

Appellant also argues the detention became illegal after Officer Escobedo took his identification and refused to return it. The record does not reflect when or if appellant's identification was returned. Nothing in the record demonstrates appellant asked for his identification and was refused. An investigative detention does not become illegal unless it continues after the purpose of the investigative detention has ceased. *Id.* In this case, the record does not reflect that appellant's identification was retained after the officer's suspicions were dispelled.

Appellant's brief suggests coercion by Officer Escobedo when he unholstered his weapon. Officer Escobedo's testimony establishes that he drew his gun when appellant jumped back into the truck and put his hands behind the seat. Officer Escobedo's actions were a reasonable safety precaution. *See Mount v. State*, 217 S.W.3d 716, 724 (Tex. App.—Houston [14th Dist.] 2007, no pet.).

When appellant brought his hands back into view, Officer Escobedo holstered his weapon. The weapon was holstered before Officer Escobedo asked for identification and questioned appellant, and before Officer Escobedo asked for consent to search. Nothing in the record demonstrates appellant's consent to the search was involuntary.

For these reasons, we hold the trial court did not abuse its discretion in denying appellant's motion to suppress. Appellant's issue is overruled and the judgment of the trial court is affirmed.


/s/    William J. Boyce
       Justice


Panel consists of Justices Boyce, Jamison, and Busby.

Do Not Publish — Tex. R. App. P. 47.2(b).